STATE OF NORTH CAROLINA v. BOBBY LEWIS ELAM.

(Filed 15 January, 1965.)

**1. Criminal Law § 71—**

During an investigation prior to arrest and indictment, defendant was advised that he had the legal right not to make any statement and that he had a right to have counsel and to telephone anyone he desired. Defendant was apprised of the purport of the investigation and defendant repeatedly stated he did not desire counsel. *Held:* An incriminating statement then made by defendant is competent as a voluntary confession, there being no inducement by promise or threat, and its admission does not constitute a denial of defendant's right to counsel, since, if defendant had any such right under the circumstances, he intelligently and understandingly waived it.

**2. Constitutional Law § 32—**

The statute prescribing the right of an indigent defendant charged with a felony to representation by counsel does not apply to preliminary examination prior to arrest and prior to indictment. G.S. 15-4.1.

**3. Criminal Law § 71—**

Where, upon objection by defendant's counsel to the introduction in evidence of defendant's extrajudicial confession, defendant's counsel in the absence of the jury cross-examines the officer in regard to the voluntariness of defendant's statement and counsel makes no indication that defendant desired to offer any evidence in rebuttal, objection to the admission of the confession on the ground that defendant had not offered any evidence is untenable.

**4. Same—**

The trial court's finding that defendant's extrajudicial confession was freely and voluntarily made will not be disturbed on appeal when the court's finding is supported by plenary competent evidence.

**5. Criminal Law § 101—**

Defendant's confession of guilt of the crime charged, together with evidence *aliunde* of the *corpus delicti* is sufficient ·to overrule defendant's motion to nonsuit.

ON *certiorari* from *May, S. J.,* 13 July 1964 Assigned Criminal Session of WAKE.

Criminal prosecution on an indictment containing two counts: The first count charges that Bobby Lewis Elam on 20 March 1964, about the hour of 4:00 a.m. in the night of the same day, did feloniously and burglariously break and enter the dwelling house of Calvin Berry Bagwell, actually occupied by Calvin Berry Bagwell at the time, with intent to commit larceny therein; the second count charges Bobby Lewis Elam at the same time and place with the larceny of $500 in United States money, the property of Calvin Berry Bagwell, which was in Bagwell's dwelling house.

The indictment was found by the grand jury at the June 1964 "A" Session of Wake superior court. On 23 June 1964 the court found that the defendant was an indigent, and appointed Earl R. Purser, an attorney at law practicing at the Wake County Bar, to represent him.

Plea: Not Guilty. Verdict: On the first count, guilty of a non-burglarious breaking and entering the dwelling house of another with intent to commit a felony or other infamous crime therein, and on the second count, guilty as charged. The judgment of the court was that defendant be imprisoned for a term of not less than seven years nor more than ten years in each case, the said sentences to run concurrently.

Defendant did not appeal to the Supreme Court. On 18 August 1964 he filed a petition for a writ of *certiorari* in this Court by his present counsel of record, requesting permission to have the trial of his case reviewed in this Court. In this petition he states in substance: His prison sentences were put into immediate effect and, due to his imprisonment, he was unable to confer with counsel as to the advisability of his appealing. About 28 July 1964 he appealed to his family to procure for him a lawyer. After the time for making appeal entries in the record had expired, his family, particularly his father, on 8 August 1964 employed the firm of Yarborough, Blanchard & Tucker to file a petition in this Court for a writ of *certiorari* in order to have a review by this Court of his trial. Attached to the petition for a writ of *certiorari* is a copy of the record proper. We allowed the petition for *certiorari* on 1 September 1964.

*Attorney General T. W. Bruton and Deputy Attorney General Harry W. McGalliard for the State.*

*Yarborough, Blanchard & Tucker for defendant appellant.*

PARKER, J.  The State's evidence shows these facts: In March 1964 Calvin Berry Bagwell, his wife, and children lived in a dwelling house situate at 1300 Wake Forest Road. He was in the Safety Taxi Company business. He kept in his house in a green box money for his payroll, and also a small box containing money for his wife's use for domestic purposes, which was kept in the dining room under a little bench. Bobby Lewis Elam during that time lived across the road from him at 1225 Wake Forest Road. Elam had visited his house more than fifty times, had had meals there, had dated his daughter for a long period of time, knew where these money boxes were kept, and that he kept money in these boxes at night. Elam knew when he fixed his payroll he put his money for the payroll in the green box, carried it

upstairs, and put it under his bed. Elam had been in his home when he put money in these boxes.

On the night of 19 March 1964 there was company at his house. After they left, he closed up his house, put the lock on the door on the north side and fastened to it a chain latch or chain lock which reached from the wall over to the door. Elam had put that latch on the door. After doing this, about 12:15 a.m. he went upstairs to his room and went to bed. A few minutes later his wife and children came upstairs. Upstairs there is a bedroom for his daughters, one for his little boy, one for his wife and himself, and one for another little boy. On this night all four bedrooms were occupied. His daughter Ruby was sleeping in bed with his youngest daughter. The steps to the upstairs are covered with carpet. His wife brought up the green money box containing the money for his payroll, put it under his bed, and gave it a little kick. In this box he had about $447 in money. He went to sleep and when he awakened the next morning and went downstairs, he found that the door on the north side of his house had been broken open, the chain lock on it was broken off, and the door was standing open about a foot and a half. The screen door had been unlocked. The door on the south side of his house was open also. He looked for his money box under the bed and found that it was gone. Later during the morning a policeman brought the green money box to his home. He opened the box. The box had some of his papers in it, but all the money was gone. When he went to bed that night, there was in the small box in the dining room about $10 in change and a $100 bill and some checks and papers. It was locked. The next morning he found that this box was gone. About twenty minutes after the policeman returned the box in which he kept money for his payroll, police officers brought in this money box. It had been broken open, and the money was gone.

On the night his money was stolen he had worked approximately twelve hours that day. He heard nothing between 12:15 a.m. and 6:00 a.m. on 20 March 1964.

R. L. Bunn is a detective sergeant with the Raleigh Police Department. He was assigned the job of investigating the break-in of Calvin Berry Bagwell's house. He talked with defendant on 6 May 1964 in a room in the detective bureau of the Raleigh Police Department. Bunn was asked by the prosecuting officer, "What conversation did you have at the time?" Defendant's counsel objected and stated that he would like to examine Bunn in respect to this conversation. Whereupon, the court directed the jury to retire to its room, and in the absence

of the jury defendant's counsel cross-examined Bunn, who testified as follows:

"I first introduced myself to Mr. Elam, advised him what he was doing there, and then advised him of his rights, that he did not have to make a statement. I told him that I was an officer of the law. I told him that he did not have to make a statement, that he was entitled to call friends, attorneys, anyone he desired. He was asked if he wanted to confer with anyone or make a phone call; he said he had no one that he wanted to talk to. He did not say that he wanted to talk to a lawyer. He stated that he did not want to talk to one and I specifically asked him if he wanted to talk to an attorney. He said that he did not. That was the first thing I said to him after introducing myself to him. I told him that I was Detective Sergeant R. L. Bunn, detective with the Raleigh Police Department. I was not dressed in uniform at that time; I was dressed in a suit. I did not tell him that he was under arrest. I told him that he was under investigation. I told him what he was under investigation for. I did not have him in custody at that time. He could have walked out if he had wanted to. If he had started walking out the door I would have restrained him. He was not in my custody. There were two other warrants, different charges on file for his arrest for worthless checks. As far as the charge of burglary he could· have left. No warrant had been issued at that time. I did not make a statement to him that it would be better for him to make a statement if he would; if he didn't it would go hard on him. I did not make the statement to him that if he did not tell me what happened that I was going to charge him with all those checks and also three charges of breaking and entering. He did not ask to make a telephone call prior to the time that I interrogated him.

"He did not make any request or reference to a bond. I did not tell him that if he would tell me the truth I would get the charges cut. I did not tell him that if he'd tell the truth I'd get him out under bond. I told him about the seriousness of the charge on which I was investigating him. I did tell him that he was entitled to a lawyer if he wanted one. He stated that he did not.

"I interrogated him approximately two and a half hours, between two and a half and three hours. It was not a continuous interrogation. We talked about his stay in different parts of the country, friends of his, his family; it was not all interrogation.

During that time he was allowed to use the telephone. He did not use the telephone. He did not ask to use one."

Bunn testified thereafter in substance on direct examination by the prosecuting officer for the State: After Elam had told about what he had done in breaking in Bagwell's house, he asked to talk with Robert Hedrick, solicitor of the Raleigh city court. Hedrick came to the room in the detective bureau. Elam told him what he had told Bunn, and asked him could he have the charges reduced if he would enter a plea to a lesser offense. Hedrick told him he did not have that authority. Elam asked Hedrick if he could have a bond. Hedrick told him he had no authority to set a bond for him on a capital charge. Elam told Hedrick he was aware of the seriousness of the charge, and he understood it carried a death penalty.

On recross-examination by defendant's counsel, Bunn testified in substance: Hedrick told Elam he had a right to have counsel. Elam had a cousin with the Raleigh Police Department, detective sergeant L. T. Williams. He asked Elam if he would like to talk to Williams, and he replied no. He asked Elam if he wanted him to contact his father with whom he had talked several times, and Elam replied no.

On redirect examination Bunn testified in substance: Prior to this time Elam had been charged with breaking in Bagwell's home, and had entered a plea to a lesser offense in the Raleigh city court. On another occasion Elam had been charged with breaking and entering Bagwell's house, and had been permitted to enter a plea to a lesser offense. Elam had talked with Hedrick on that occasion.

At this point Judge May found as a fact that the statement made by Elam to Bunn was made freely and voluntarily, and that the statement was made without any inducements, promises, or offer of reward, or threats or coercion, and overruled defendant's objection. Defendant assigns this as error.

After Judge May ruled the statement competent, the jury was called back into the courtroom, and Bunn testified in substance: He introduced himself to Elam as a police officer of the Raleigh Police Department and informed him that he was there on a charge of burglary of Bagwell's house at 1300 Wake Forest Road. He told Elam he did not have to make a statement, that he was entitled to counsel, and that he could make a telephone call if he so desired. Elam replied he did not want an attorney and did not want to call anyone. Elam first said that he knew nothing about the breaking-in of Bagwell's house, that it was news to him. They then discussed a trip Elam had made to New York City and how he got the money to make the trip. After about two and one-half to three hours of conversation, Elam said that about 4:00

a.m. on 20 March 1964 he parked his car on the west side of the street in front of the Bagwell house, that he went to the door on the north side of Bagwell's house, jimmied the lock with a screwdriver, and took the screwdriver and pried the chain night latch, that he had installed, loose from the wall. He then opened the door and went in the house. He then went upstairs to see the daughter of Bagwell. When he saw her in bed with another girl, he was afraid to wake her up for fear someone else in the house would wake up. As he started to leave, he recalled the Bagwell family handling money on various occasions when he was there and one box being kept under the bed. He then eased into Mr. Bagwell's room and took the box under the bed. He carried it downstairs, and then took the box in the dining room. He then went out the door he had opened. He left the small box in the garage in the rear of the house. The larger box that he had taken from under the bed he threw from his car on Brookside Drive after taking the cash. He got a very small amount of money out of the box he took from the dining room. He got between $300 and $400 out of the box that he took from under Bagwell's bed. The next day he made a trip to New York City and spent the money. Sergeant M. L. Stephenson and Robert Hedrick were present when defendant made this statement. He said that on prior occasions he had climbed in the window by means of a ladder to see Bagwell's daughter. That he had been drinking a considerable amount of alcoholic beverages before breaking into Bagwell's house, but that he was not drunk. After Elam had made this statement, he served a warrant on him charging him with burglary.

Robert Hedrick testified as a witness for the State that he went to a room in the office of the detective bureau to talk to Elam "as a result of sergeant Bunn coming to him." He was then asked by the prosecuting officer: "And when you talked to him, what was your conversation?" Defendant objected. The court overruled the objection, and defendant excepted and assigns as error the admission in evidence of this conversation. Hedrick testified in substance: When he walked in the room, Bunn said Elam wanted to talk to him. He asked Elam if he knew what he was charged with. Elam said he did. He asked him if he knew he was charged with first degree burglary. Elam said he did. He told Elam what the penalty might be. Elam stated this had been explained to him. He asked Elam if he had counsel, or if he wanted to talk to counsel. Elam replied he had no counsel, and did not wish to talk with a lawyer. Elam said Bunn had explained to him that he did not have to make a statement unless he desired. Elam then stated to him that he had broken into and entered the house of Bagwell and taken the money boxes therein. (What he told Hedrick is in substantial

accord with what Bunn testified Elam told him, which is set forth above, and its repetition here would be supererogatory.) He told Elam there was nothing he could do for him, that he would be in his court strictly for a preliminary hearing. That if probable cause was found in his court, the trial would be in the superior court. That any help he might get as to pleading to a lesser offense would have to be from the solicitor for the State in the superior court, and he advised him to talk to the solicitor for the State. His purpose in going to see Elam was not to get a statement from him. There are few people who want to talk to him, but if a person wants to talk to him, he talks to him. He asked Elam some questions. He advised Elam of his constitutional rights. He prosecuted Elam at the probable cause hearing in the city court, and Mr. Purser appeared for Elam.

Defendant contends that his extrajudicial confessions of guilt to Bunn and Hedrick were incompetent and should have been excluded, because his extrajudicial confessions were "elicited in violation of the defendant's constitutional right of counsel," when he was interrogated by Bunn and to a small degree by Hedrick in respect to a felonious and burglarious breaking and entry into Bagwell's home and to the larceny of money therefrom before a warrant had been taken out against him on these charges and before he had been indicted on these charges. The first count in the indictment here charges a capital offense. Defendant in support of his position relies upon *Escobedo v. Illinois,* 378 U.S. 478, 12 L. Ed. 2d 977, a five-to-four decision; *Hamilton v. Alabama,* 368 U.S. 52, 7 L. Ed. 2d 114; *S. v. Simpson,* 243 N.C. 436, 90 S.E. 2d 708; and G.S. 15-4.1.

The facts in the *Escobedo* case are entirely different from the facts in the instant case. In the *Escobedo* case the trial court admitted in evidence incriminating statements made by Escobedo during a long police interrogation conducted before defendant was formally indicted for murder. The police during this interrogation did not inform him that he had the right to remain silent, denied his repeated requests to consult with his attorney who was in the building during part of the interrogation, and informed defendant that they had convincing evidence of his guilt. The Supreme Court of Illinois affirmed the conviction. The Supreme Court in an opinion by Mr. Justice Goldberg, expressing the views of five members of the Court, held that under the particular circumstances obtaining, the police investigation having been one focused on the accused as a suspect rather than a general investigation, the refusal to honor the accused's requests to consult with his attorney constituted a denial of his right to benefit of counsel under the 6th and 14th Amendments to the Federal Constitution, and that

the statements should not have been admitted in evidence. It would seem the *Escobedo* case, as we interpret it, does not hold that once an accused becomes a suspect and, presumably, is arrested, any admission made to the police thereafter is inadmissible in evidence where the accused has intelligently and understandingly stated repeatedly to the police that he did not want the benefit of counsel. Our view in this respect is fortified by a statement in the dissenting opinion of Mr. Justice White, joined in by Mr. Justice Clark and Mr. Justice Stewart, which is as follows: "At the very least the Court holds that once the accused becomes a suspect and, presumably, is arrested, any admission made to the police thereafter is inadmissible in evidence unless the accused has waived his right to counsel."

In *Crooker v. California,* 357 U.S. 433, 2 L. Ed. 2d 1448, five members of the Court held that the due process clause of the 14th Amendment is not violated by the use in a state prosecution for murder of a confession merely because it occurred while the accused was without counsel as a consequence of a previous denial by the police of his requests therefor, where, after termination of police interrogation, the accused, through both arraignment and trial, was represented by his own counsel, and the sum total of the circumstances during the time he was without counsel was a voluntary confession by a college-educated man with law school training who knew of his right to keep silent.

The case of *Cicenia v. LaGay,* 357 U.S. 504, 2 L. Ed. 2d 1523, was a prosecution for murder. The facts were these: On 17 March 1947 Charles Kittuah, the owner of a small dry goods store in Newark, New Jersey, was shot and killed during the course of a robbery. The crime remained unsolved until 17 December 1949, when the Newark police obtained information implicating Cicenia and two others. Cicenia received a message to report to police headquarters. He sought the advice of a lawyer, who advised him to report as requested. He did so, and arrived at police headquarters at 9:00 a.m. on December 18. About 2:00 p.m. the same day Cicenia's father, brother, and the lawyer arrived at the police station. The lawyer immediately asked to see Cicenia, but this request was refused by the police. He repeated this request at intervals throughout the afternoon and well into the evening, but without success. During this period Cicenia, who was being questioned intermittently by the police, asked to see his lawyer. These requests were also denied. Lawyer and client were not permitted to confer until 9:30 p.m., by which time Cicenia had made and signed the written confession to the murder of Kittuah. This confession was admitted in evidence against him in his trial for murder. The majority opinion written by Mr. Justice Harlan, expressing the views of five

members of the Court, stated: "The contention that petitioner had a constitutional right to confer with counsel is disposed of by *Crooker v. California,* 2 L. Ed. 2d 1448, decided today. [We summarized the *Crooker* case above.] * * * In contrast, petitioner would have us hold that any state denial of a defendant's request to confer with counsel during police questioning violates due process, *irrespective of the particular circumstances involved.* Such a holding, in its ultimate reach, would mean that state police could not interrogate a suspect before giving him an opportunity to secure counsel. Even in federal prosecutions this Court has refrained from laying down any such inflexible rule. [Citing authority.] Still less should we impose this standard on each of the 48 states as a matter of constitutional compulsion." (Emphasis ours.) The Supreme Court affirmed the judgment below.

The majority opinion in the *Escobedo* case states: "In any event, to the extent that Cicenia or Crooker may be inconsistent with the principles announced today, they are not to be regarded as controlling. * * * *We hold only* that when the process shifts from investigatory to accusatory — when its focus is on the accused and its purpose is to elicit a confession — our adversary system begins to operate, *and, under the circumstances here,* the accused must be permitted to consult with his lawyer." (Emphasis ours.) As we interpret the *Escobedo* case, it does not modify or overrule what is stated in effect in the *Cicenia* case that there is no inflexible rule that the state's denial of an accused's request to confer with counsel during police questioning before being formally charged with a criminal offense in a warrant or an indictment violates due process, irrespective of the particular circumstances.

In *Massiah v. United States,* 377 U.S. 201, 12 L. Ed. 2d 246, the Court held that as of the date of the indictment the prosecution is disentitled to secure admissions from the accused.

Bunn, during his interrogation of Elam before he was formally charged with the offenses here, repeatedly stated to Elam that he did not have to make a statement, that he had a right to the benefit of counsel, that he could use the telephone to call his friends or counsel or anyone that he wished, and Elam repeatedly stated in the presence of Bunn and Hedrick that he wanted no counsel, that he did not wish to call anyone over the telephone, and that he understood that he did not have to make a statement unless he so desired. It is plain from all the circumstances shown by the evidence that Elam knew he was being interrogated about a capital offense, knew the penalty for such an offense, and understandingly and intelligently said repeatedly that he wanted no counsel, and did not want to call counsel or anyone else. "The constitutional right [to counsel], of course, does not justify forcing counsel

upon an accused who wants none." *Moore v. Michigan,* 355 U.S. 155, 2 L. Ed. 2d 167, 172. We hold that under the circumstances here surrounding the making of the extrajudicial confessions of guilt by defendant as shown by the evidence he was not denied the constitutional right to the benefit of counsel, because, if he had any such right, he intelligently and understandingly waived it. *Johnson v. Zerbst,* 304 U.S. 458, 82 L. Ed. 1461; *Johnson v. United States,* 8 Cir., 318 F. 2d 855, *cert. den.* 375 U.S. 987, 11 L. Ed. 2d 474; *S. v. Roux,* 263 N.C. 149, 139 S.E. 2d 189; *S. v. McNeil, ante,* p. 260, 139 S.E. 2d 667.

G.S. 15-4.1 reads in part: "When a defendant charged with a felony is not represented by counsel, before he is required to plead the judge of the superior court shall advise the defendant that he is entitled to counsel. If the judge finds that the defendant is indigent and unable to employ counsel, he shall appoint counsel for the defendant but the defendant may waive the right to counsel in all cases except a capital felony * * * but a defendant without counsel cannot plead guilty to an indictment charging a capital felony." In our opinion, and we so hold, this statute has no application to the interrogation of Elam here by the police before he was formally charged with the offenses here charged against him.

Defendant's contention that Elam's extrajudicial confessions were admitted without a proper preliminary inquiry is overruled. When sergeant Bunn was asked by the prosecuting officer for the State what conversation he had with Elam, Elam's lawyer objected and the trial judge sent the jury to their room. Whereupon, Elam's lawyer, Mr. Purser, cross-examined and recross-examined Bunn at length in respect to the circumstances surrounding the making of the extrajudicial confessions of guilt by Elam. After this was finished, there is nothing in the record to indicate that defendant desired to offer any evidence in rebuttal of Bunn's testimony. Certainly, there is nothing to indicate that the trial judge refused to hear any evidence by defendant in rebuttal. "It was not the duty of the court to call upon the defendant to offer evidence." *S. v. Smith,* 213 N.C. 299, 195 S.E. 819. When Hedrick testified as to Elam's incriminatory statements, there was no request by Elam for a preliminary inquiry, and there was no need of one because all of this had been fully gone over in the cross-examination of Bunn by defendant's counsel.

*Hamilton v. Alabama, supra,* and *S. v. Simpson, supra,* relied on by defendant, are cases holding that a defendant in a capital case, when it is tried on the merits, must have counsel. They are not in point here.

The trial judge's finding of fact that the extrajudicial confessions by Elam were free and voluntary is supported by plenary competent evi-

dence, and will not be disturbed on appeal. He properly admitted them in evidence. *S. v. Davis,* 253 N.C. 86, 116 S.E. 2d 365, *cert. den.* 365 U.S. 855, 5 L. Ed. 2d 819; *S. v. Marsh,* 234 N.C. 101, 66 S.E. 2d 684; *S. v. Rogers,* 233 N.C. 390, 64 S.E. 2d 572; Strong's N. C. Index, Vol. 1, Criminal Law, § 71.

Defendant's assignment of error to the court's denial of his motion for judgment of compulsory nonsuit is overruled. The State offered this evidence, *aliunde* of defendant's extrajudicial confessions, of the *corpus delicti:* The testimony of Calvin Berry Bagwell in respect to the front door of his house having been broken open, and in respect to the larceny from within his house of two boxes containing money, and that police officers returned to him his money boxes empty of the money he had in them the night before his house was broken into and entered. In addition, defendant testifying for himself said on direct examination: "I am familiar with Mr. Bagwell's residence * * *. I was familiar with part of the upstairs of the [Bagwell] house." *S. v. Crawford,* 260 N.C. 548, 133 S.E. 2d 232.

All defendant's assignments of error are overruled. In the trial we find

No error.