STATE v. ALBERT (ALTON) E. BARNES, PETITIONER.

(Filed 2 June, 1965.)

**1. Constitutional Law § 1—**

　　The Supreme Court of North Carolina is the supreme arbiter in the construction of the State Constitution and laws but must accept the interpre-

tation of the Supreme Court of the United States with regard to a defendant's rights under the Federal Constitution; nevertheless, Federal Courts inferior to the United States Supreme Court have no authority to review and reverse the decisions of the State Supreme Court, even in regard to questions arising under the Federal Constitution.

**2. Criminal Law § 71—**

A free and voluntary confession is admissible in evidence.

**3. Same—**

It is not required that a statement be volunteered in order to be voluntary.

**4. Same—**

When the findings of fact by the trial court with regard to the voluntariness of a confession are supported by competent evidence they are conclusive on appeal to the courts, both State and Federal, although the conclusions of law to be drawn from the facts found are not binding on the reviewing courts.

**5. Same—**

Where defendant challenges the voluntariness of a confession it is the duty of the trial court, in the absence of the jury, to make a full investigation, record the evidence, and find the facts in regard to the circumstances surrounding the making of the incriminating statements in order that its conclusions as to whether the confession was free and voluntary may be reviewed and the prisoner's rights protected under both the State and Federal Constitutions, and when the court admits a confession in evidence over defendant's objection without setting forth the predicate facts, a new trial must be awarded.

PARKER, J., concurring in result.

ON *certiorari* to review the trial and conviction of Alton E. Barnes, before *Bundy, J.,* at the February, 1964 Session, ONSLOW Superior Court.

*T. W. Bruton, Attorney General, James F. Bullock, Assistant Attorney General for the State.*
*Earl Whitted, Jr., Samuel S. Mitchell for defendant appellant.*

HIGGINS, J. On October 3, 1961, the Grand Jury returned a bill of indictment against the defendant, Alton E. Barnes, Robert E. Elliott, and James A. Andrews, charging that on September 23, 1961, the above named "unlawfully, wilfully, maliciously, and feloniously did injure the home of Robert E. Christenbury and wife . . . situate near the Rifle Range Road, by use of a high explosive, to-wit: a hand grenade. . . ."

Both Barnes and Christenbury were members of the United States Marine Corps in active service. Barnes was arrested by the Marine Corps authorities and on September 29, 1961, was turned over to the Sheriff of Onslow County for prosecution in the State court. The defendant and his family made an unsuccessful effort to employ counsel. He was not afforded a preliminary hearing. On the day following the return of the indictment the case was called for trial. According to the record, Elliott and Andrews, represented by counsel, entered pleas of *nolo contendere*. Barnes, without counsel, entered a plea of not guilty. At the conclusion of the State's evidence a verdict of not guilty was directed by the court on the charges against Elliott and Andrews. They were released. The defendant Barnes then entered a plea of guilty. From a sentence of 20 years in the State's prison, he did not appeal.

On November 2, 1962, Barnes filed a petition before the Superior Court of Onslow County for a Post Conviction Hearing, upon the ground his constitutional rights were denied him in the following particulars: (1) He was not given a preliminary hearing. (2) He was not represented by counsel. (3) He was placed on trial the day after the indictment was returned. (4) The two codefendants were represented by counsel and that he alone was without counsel and in this predicament he entered a plea of guilty because of "his lack of legal knowledge to cope with the legal machination in which he was involved." After a hearing on February 6, 1963, Judge Mintz concluded:

"2. That it does not appear from the records that the rights guaranteed under the Constitution of the United States or the State of North Carolina, or both, were prejudiced by the fact that the defendant in this case did not have a preliminary hearing or that he was tried on the same day a bill of indictment was returned against him.

"3. That the petitioner has failed to show that there was a substantial denial of the constitutional rights of the petitioner in the original criminal action in which he was convicted."

This Court, on April 16, 1963, denied the defendant's application for *certiorari* to review the Post Conviction Hearing. The Supreme Court of the United States granted *certiorari* and on October 14, 1963, vacated our order of April 16, 1963, and remanded the cause to us for further consideration in the light of the decision in *Gideon v. Wainwright,* 372 U.S. 335. Upon further consideration, this Court set aside the verdict of guilty, vacated the judgment, and remanded the cause to the Superior Court for a new trial. *State v. Barnes,* 260 N.C. 775, 133 S.E. 2d 680.

The new trial began on February 27, 1964. After the defendant's plea of not guilty, Judge Bundy conducted a preliminary inquiry, in the

absence of the jury, to determine whether SBI Agent John B. Edwards should be permitted to testify before the jury as to certain incriminating admissions the defendant made to him a few minutes before the first trial began. At the time of the statements the defendant was in custody. His efforts to employ counsel had been unsuccessful. The Grand Jury had returned the indictment on the previous day. The witness Edwards told the defendant the trial was to begin immediately. The defendant knew the codefendents were represented by counsel. In this situation he entered his plea of not guilty. The State offered evidence, including the defendant's admission of guilt made to Agent Edwards. At this juncture the defendant changed his plea to guilty. From prison he initiated procedures which culminated in our order for a new trial.

After the defendant had entered his plea of not guilty at the *new trial,* the Presiding Judge (Bundy) in the absence of the jury, heard evidence concerning the circumstances under which the defendant's admissions were made to the witness Edwards. By stipulation, Judge Bundy took into account the court record of the evidence on the same question presented before Judge Mintz at the Post Conviction Hearing. This evidence is voluminous. Some of it, on essential points, was conflicting. The present record leaves the conflict unresolved. Judge Bundy should have found the facts under which the incriminating statements were made. This he failed to do. In the absence of findings of fact, we are unable to determine whether the confession was properly admitted. Under present procedures it is essential not only that a full investigation be made and the evidence recorded, but the facts must be found which disclose the circumstances and conditions surrounding the making of the incriminating admissions. Even then, some United States District Judge, on petition, may order another trial or a release upon the basis of the petitioner's unsupported allegations challenging not only the integrity of the court proceedings but the competency of his own counsel.

When a confession is offered in evidence and challenged by objection, the court, in the absence of the jury, should determine whether the confession was free and voluntary. *State v. Davis,* 253 N.C. 86, 116 S.E. 2d 365; *State v. Rogers,* 233 N.C. 390, 64 S.E. 2d 572; *State v. Elam,* 263 N.C. 273, 139 S.E. 2d 601. In passing on the admissibility of a confession, it is as much the duty of the State courts to protect the prisoner's rights under the Due Process Clause of the 14th Amendment to the Constitution of the United States as it is to protect his rights under our State Constitution. There is this difference, however: this Court places its own interpretation on the North Carolina Constitution and laws but we must accept the interpretation the Supreme Court of

the United States places on a prisoner's rights under the Due Process Clause. *State v. Davis, supra; Constantian v. Anson County,* 244 N.C. 221, 93 S.E. 2d 163; *Escobedo v. Illinois,* 378 U.S. 478, 12 L. Ed. 2d 977; 84 S. Ct. 1758; *Massiah v. U. S.,* 377 U.S. 201, 12 L. Ed. 2d 246, 84 S. Ct. 1199.

Since *State v. Roberts,* 12 N.C. 259, this Court has held voluntary confessions are admissible in evidence. To be voluntary, however, they must be uninfluenced either by hope or by fear. As stated in the *Roberts* case, confessions are reliable and admissible when "attributable to that love of truth which predominates in the breast of every man not operated upon by other motives more powerful with him . . ." When the admissions are made to relieve the pressure on the conscience arising from a sense of guilt, they would seem to carry sufficient stamp of truth to justify their admission in evidence. We have consistently held that such admissions, when freely and voluntarily made, are competent, whether made before or after arrest; before or after indictment; before or after the employment of counsel. We think our decisions are based on sound legal principles. We modify them only to the extent necessary to comply with the mandates from the Supreme Court of the United States.

In the establishment of a factual background by which to determine whether a confession meets the tests of admissibility, the trial court must make the findings of fact. When the facts so found are supported by competent evidence, they are conclusive on appellate courts, both State and Federal. *State v. Outing,* 255 N.C. 468, 121 S.E. 2d 847; *State v. Davis,* 253 N.C. 86, 116 S.E. 2d 365; *certiorari* denied, 365 U.S. 855; *Watts v. Indiana,* 338 U.S. 49; *Lyons v. Oklahoma,* 322 U.S. 596; *Lisenba v. California,* 314 U.S. 219. Of course, the conclusions of law to be drawn from the facts found are not binding on the reviewing courts. In *Watts,* the principle is stated concisely: "(I)n all the cases which have come here . . . from the courts of the various states in which it was claimed that the admission of coerced confessions vitiated convictions for murder, there has been complete agreement that any conflict in testimony as to what actually led to a contested confession is not this Court's concern. Such conflict comes here authoritatively resolved by the State's adjudication." A statement, to be voluntary, of course, need not be volunteered.

In matters involving Federal law we recognize the authority of the Supreme Court of the United States to review and reverse our decisions. However, as a State court of last resort, we do not concede that United States Courts inferior to the Supreme Court have that authority.

In this case, after preliminary inquiry, Judge Bundy, concluding the defendant's admissions to the witness Edwards were voluntary, permit-

STATE v. BARNES.

ted the witness to repeat them to the jury over the defendant's objection. The record of the Post Conviction Hearing which was before Judge Bundy on stipulation discloses discrepancies with respect to the circumstances surrounding the incriminating admissions. Judge Bundy did not resolve the conflicts by findings of fact. This was the exclusive function of the trial court. Absent findings of fact, this Court is unable to say whether Judge Bundy committed error in admitting the contested confession. We may, it seems, no longer rely on the presumption of regularity in such matters. If the confession is offered and challenged in the next trial, the Presiding Judge should make a full investigation, record the evidence, and make findings of fact. The evidence should sustain the findings and the facts found should support the conclusion. To have finality, the record must show the accused was tried in accordance with due process of law. On account of the deficiency of the record in this respect, the defendant is entitled to a

New trial.

PARKER, J. I concur merely in the result that the defendant is entitled to a new trial.

This is another in a long line of cases presenting the question as to whether a confession was properly admitted into evidence under the Fourteenth Amendment.

This is stated in *S. v. Chamberlain*, 263 N.C. 406, 139 S.E. 2d 620:

"It is also well settled that the 14th Amendment to the United States Constitution prohibits the use of coerced confessions in state prosecutions, whether the coercion is physical or mental. *Hayes v. Washington*, 373 U.S. 503, 10 L. Ed. 2d 513; *Thomas v. Arizona*, 356 U.S. 390, 2 L. Ed. 2d 863, reh. den. 357 U.S. 944, 2 L. Ed. 2d 1557; *Payne v. Arkansas*, 356 U.S. 560, 2 L. Ed. 2d 975.

"A defendant in a state criminal trial has a right to be tried according to the substantive and procedural due process requirements of the 14th Amendment to the United States Constitution. *Rogers v. Richmond*, 365 U.S. 534, 5 L. Ed. 2d 760; Stansbury, N. C. Evidence, 2d Ed., § 183."

"There is torture of mind as well as of body; the will is as much affected by fear as by force." *Watts v. Indiana*, 338 U.S. 49, 93 L. Ed. 1801, 1805.

It is well-settled law that we are required to accept the interpretation the United States Supreme Court has placed on the due process clause of the Fourteenth Amendment to the Federal Constitution. *S. v. Davis*, 253 N.C. 86, 116 S.E. 2d 365, cert. den. 365 U.S. 855, 5 L. Ed. 2d 819.

These facts are shown without contradiction in the evidence: A warrant was sworn out before the Onslow county court on 25 September 1961 charging defendant with a violation of G.S. 14-49, a serious felony, for which the punishment, as prescribed in the statute, is imprisonment for not less than five years and not more than thirty years. It was returnable to the Onslow county court on 28 September 1961. On 29 September 1961 the U. S. Marine Corps surrendered defendant to the county authorities. By reason of his inability to give bail, defendant was placed in the common jail of Onslow County. On 29 September John B. Edwards, an agent of the State Bureau of Investigation, saw defendant in custody in the sheriff's office. Edwards told defendant he needed a lawyer, and did not have to make a statement unless he so desired. Defendant said he did not want to make a statement.

On 29 or 30 September 1961 defendant in jail conferred with E. W. Summersill of the Onslow County Bar in an endeavor to employ him as his counsel to defend him. He saw Summersill again on 1 and 2 and 3 October 1961. Summersill did not appear for him, because defendant could not pay him the fee he demanded.

Superior court convened in Onslow County on 2 October 1961. According to the record proper, the indictment charging defendant with the same offense as the warrant was returned by the grand jury on 3 October 1961 — the exact hour of the day when returned does not appear in the record.

Edwards knew defendant's case was to be tried on the afternoon of 3 October 1961, because the solicitor for the State had told him so. On that afternoon Edwards saw and talked with defendant in the sheriff's office about the explosion at the Christenbury home. Defendant told Edwards he had no lawyer, although he had tried to employ Summersill. Defendant, after conferring with his wife privately, in the absence of counsel made a statement incriminating himself. Edwards wrote down his statement and asked him questions. When he finished, it was about 5 p.m. Defendant was immediately carried to the courtroom, entered a plea of guilty, and was sentenced to imprisonment for 20 years. It is a reasonable inference that the indictment to which defendant pleaded guilty had been returned before defendant had completed his statement to Edwards, if not before he began it. At least he was certainly in custody before he made his confession under a warrant charging him with the same offense the indictment did.

Defendant was given no preliminary hearing. There is no satisfactory evidence in the record to show that defendant knew an indictment had been returned against him, or that he was to be tried on the afternoon of 3 October 1961 in superior court. It is true defendant was not sub-

jected to long and persistent questioning, and there is no evidence of threats or promises by Edwards.

Considering the totality of the circumstances here shown by the uncontradicted evidence, it is my opinion that the confession deliberately elicited under such conditions, when defendant needed a lawyer and in the very short time allowed him had tried unsuccessfully to employ a lawyer, contravenes the dictates of fairness in the conduct of criminal cases to a defendant under indictment immediately before his trial upon an indictment returned the day of his trial, when he had had no preliminary hearing and had been in custody only parts of five days, and was in real effect an overcoming of his will not to make a statement, is a denial of due process under the Fourteenth Amendment as interpreted in the decisions of the United States Supreme Court above cited, and was wrongfully admitted in evidence against defendant.

In my opinion, the uncontradicted evidence shows that the extrajudicial confession of defendant is incompetent as a matter of law, and there is no need for any additional finding of facts by a trial judge. *Massiah v. United States,* 377 U.S. 201, 12 L. Ed. 2d 246 (18 May 1964).