STATE v. LABURN LEON KEITH.

(Filed 14 January, 1966.)

**1. Criminal Law § 71—**

The competency of a confession is a preliminary question for the trial court upon the *voir dire,* and the court's ruling thereon will not be disturbed if supported by any competent evidence.

**2. Same—**

A confession is voluntary only if, in fact, it is voluntarily made.

**3. Same—**

Upon the *voir dire* the court heard evidence that defendant voluntarily made the confession, later admitted in evidence, without force, fear or favor. Defendant elected not to introduce any evidence upon the *voir dire,* but contended that he had never made any confession. *Held:* The admission of the confession in evidence was proper.

**4. Same—**

Objection that the court did not find the facts upon which it concluded that the confession offered in evidence was voluntary *held* inapposite when defendant contends that he had made no confession and does not contest the State's evidence supporting the conclusion of voluntariness.

**5. Criminal Law § 21—**

The evidence in this case shows that the warrant was read to and served upon defendant, and defendant's contention to the contrary *held* precluded by waiver in failing to make objection until after verdict.

APPEAL by defendant from *Bickett, J.,* 1 March 1965 Criminal Session of WAKE.

The defendant was indicted with another, Lewis Arthur Penland, for safecracking, and the two were tried together. During the course of the trial, Penland changed his plea of not guilty to guilty as charged in the bill of indictment. Defendant Keith maintained his plea of not guilty and the trial continued as to him.

The State's evidence adduced in the trial below tends to show that between 5:30 p.m., 20 January 1965, and 7:30 a.m., 21 January 1965, The Auto Parts Company, Inc., in Raleigh, North Carolina, was broken into and a safe, weighing some 200 pounds, containing checks, cash money, and charge and cash tickets, was taken from the building occupied by said Auto Parts Company, Inc.

Upon investigation at the scene, police officers of the City of Raleigh proceeded to the home of defendant Penland in the City of Raleigh. Defendants Penland and Keith were asleep at Penland's home. This was about 9:00 a.m. on 21 January 1965. The officers asked Penland and Keith to go with them to the Police Department to answer some questions; they consented. Penland gave the officers permission to search his car. The search was made and the officers found "a sledge hammer, a crowbar and a screw driver."

Sometime after these defendants had been taken to City Hall and questioned in separate rooms, Penland agreed to take the officers to where they would find the safe. Penland then directed them to where the safe was found, off the Holly Springs Road approximately a quarter of a mile on a dirt road. The safe was identified as the safe taken from the Auto Parts Company, Inc. About 2:30 p.m. on 21 January 1965, while the officers were returning to Raleigh with Penland, they were informed over the police radio that Keith had told the officers at the Police Department where he had thrown certain papers taken from the safe. The papers were found where Keith said he had thrown them. Penland then took the officers to his home and turned over to them $63.97 which he said was taken from the safe. This money was wrapped in masking tape and was taken from a trash can in the room where Keith and Penland were sleeping when the officers arrived that morning.

Sergeant Stephenson of the Raleigh Police Department testified: "* * * I went into the * * * interrogation room where Leon Keith was seated. I told Leon that he was not under arrest, he was free to leave any time he so desired, the door was not locked, that I wanted to talk to him in regards to a safe job at Auto Parts Co., that anything he told me could be used either for or against him, that if he wished to call his attorney he could or any friend or any relatives, that the phone was outside, he was welcome to use it."

At this point the jury was excused and Sergeant Stephenson continued his testimony. He testified that Keith was not detained and could have left the Police Station at any time; that he asked Keith if his mother would not help him get an attorney, and defendant replied, "his mother was fed up with him"; that "he did not want to call anybody"; that "no threats whatsoever" were made to defendant Keith. Defendant's counsel cross-examined the witness but Keith did not take the stand at the hearing in the absence of the jury. The court then stated: "Let the record show the statement made was voluntary."

The jury returned and Sergeant Stephenson testified as follows with respect to details of the "safe robbery of Auto Parts, Inc.," as told to him by defendant Keith: That he and Penland had "been riding around and drinking quite heavily"; that they went to Auto Parts Company, Inc., and he, Keith, kicked the door open and went inside and located the safe; that he began rolling it to the door but "the wheels froze up," so he lifted it and carried it outside; that he and Penland put it in Penland's car; that they proceeded to a point outside Raleigh where Keith "beat the safe open (with a sledge hammer and crowbar) and removed the contents" therefrom while Penland drove up and down the road as a "lookout"; that on the return trip to Raleigh, Keith discarded some of the contents on the roadside; that they returned to Auto Parts Company, Inc., to replace the rear seat to Penland's car which had been removed to accommodate the safe; that upon doing this they returned to Penland's home where they slept until awakened by the police.

Defendant Keith testified in his own behalf and admitted that he had been drinking with defendant Penland on the night of 20 January 1965, but denied any participation in the robbery and denied that he had made any confession whatever to the officers.

The jury returned a verdict of guilty as charged in the bill of indictment. From the judgment imposed, defendant appeals, assigning error.

*Attorney General Bruton, Deputy Attorney General Harrison Lewis, Trial Attorney Henry T. Rosser for the State.*
*Charles O'H. Grimes for defendant.*

DENNY, C.J. The appellant assigns as error the ruling of the court below that the confession allegedly made by defendant Keith to Sergeant Stephenson of the Raleigh Police Department, was voluntary.

This is an unusual case in some respects. Defendant Keith does not contend that his confession was coerced or otherwise improperly

obtained; on the contrary, he contends he made no confession, and so testified in his own behalf in the trial below; he further contends that he was detained for six hours and was never informed of any charge against him.

The State's evidence, however, is to the effect that Sergeant Stephenson informed Keith that he was not under arrest; that he was free to leave any time he so desired but that he (Stephenson) wanted to talk to him about a safe job at Auto Parts; that anything he told him could be used either for or against him; that if he wanted to do so he could call his attorney or any friend or relative; that he did not have to tell him anything; that no threats of bodily harm would be made against him if he did not talk. In response to the suggestion that he might call his attorney or a friend or relative, defendant stated that he did not want to call anyone.

There was ample evidence to support the ruling of the court below that the statements made by Keith were voluntary.

In *S. v. Fain*, 216 N.C. 157, 4 S.E. 2d 319, Stacy, C.J., said: "It is the established procedure with us that the competency of a confession is a preliminary question for the trial court, *S. v. Andrew*, 61 N.C. 205, to be determined in the manner pointed out in *S. v. Whitener*, 191 N.C. 659, 132 S.E. 603, and that the court's ruling thereon will not be disturbed, if supported by any competent evidence. *S. v. Moore*, 210 N.C. 686, 188 S.E. 421. * * *"

A confession is voluntary only if in fact it was voluntarily made. When a defendant objects to the introduction of a purported confession, it is the duty of the trial judge to hear the evidence bearing on the voluntariness of such purported confession in the absence of the jury. This was done in the instant case. The defendant did not testify on the *voir dire* or offer any evidence tending to show the purported confession was involuntary or improperly obtained. Defendant's counsel, however, did cross-examine Sergeant Stephenson at length.

In *S. v. Elam*, 263 N.C. 273, 139 S.E. 2d 601, Parker, J., speaking for the Court, said:

"Defendant's contention that Elam's extrajudicial confessions were admitted without a proper preliminary inquiry is overruled. When sergeant Bunn was asked by the prosecuting officer for the State what conversation he had with Elam, Elam's lawyer objected and the trial judge sent the jury to their room. Whereupon, Elam's lawyer, Mr. Purser, cross-examined and recross-examined Bunn at length in respect to the circumstances surrounding the making of the extrajudicial confessions of guilt by Elam. After this was finished, there is nothing in the record to indicate that defendant desired to offer any

evidence in rebuttal of Bunn's testimony. Certainly, there is nothing to indicate that the trial judge refused to hear any evidence by defendant in rebuttal. 'It was not the duty of the court to call upon the defendant to offer evidence.' *S. v. Smith,* 213 N.C. 299, 195 S.E. 819. * * *"

No error has been made to appear in the admission of the defendant's confession. *S. v. Whitener,* 191 N.C. 659, 132 S.E. 603; *S. v. Manning,* 221 N.C. 70, 18 S.E. 2d 821; *S. v. Litteral,* 227 N.C. 527, 43 S.E. 2d 84; *S. v. Elam, supra.*

The defendant relies on the case of *S. v. Barnes,* 264 N.C. 517, 142 S.E. 2d 344, and contends that the court below failed to find the facts in regard to the circumstances surrounding the making of the incriminating statements in order that the conclusion as to whether the confession was free and voluntary might be reviewed on appeal.

In the instant case, there was no conflicting testimony offered on the *voir dire* as there was in such hearing in the *Barnes* case. Defendant's contention is without merit on the record before us and we so hold.

The defendant assigns as error the trial court's denial of his motion to dismiss the action on the ground there is no evidence that the warrant issued by the City Court of Raleigh was ever read to or served on him.

The State's evidence tends to show that the warrant was issued on 21 January 1965, read to and served on the defendant Keith sometime after 1:00 p.m. on the day it was issued, and that later that same afternoon Keith waived a preliminary hearing in the City Court of Raleigh. Defendant testified that he did not recall whether or not he had a preliminary hearing.

The record further tends to show that the Judge of the City Court of Raleigh found probable cause and fixed bond in the sum of $1,000 on 21 January 1965. The bill of indictment was returned at the February 1965 Special Session of the Superior Court of Wake County. Judge Bickett appointed counsel to represent the defendant on 12 February 1965. Defendant was not tried until 1 March 1965 Conflict Criminal Session of the Superior Court of Wake County.

In 22 C.J.S., Criminal Law, § 327, page 838, it is said:

"Objections to irregularities or defects in the issuance, form, or execution of a warrant of arrest, which do not go to the jurisdiction, should be taken on the preliminary examination before the magistrate, and if accused fails to object at that time, enters a general appearance, and makes a plea to the charge, such irregularities will be held to be cured or the objections thereto will be held to be waived."

The record herein discloses that the defendant did not move to dismiss on the ground specified in his motion until after the verdict of the jury had been returned.

In the case of *S. v. Doughtie*, 238 N.C. 228, 77 S.E. 2d 642, it is said:

> "Any defect in the process by which a defendant is brought into court may be waived by him by appearing before the court having jurisdiction of the case. *S. v. Turner, supra* (170 N.C. 701, 86 S.E. 1019); *S. v. Cale, supra* (150 N.C. 805, 63 S.E. 958). The defendant may waive a constitutional right relating to a mere matter of practice or procedure. *Miller v. State*, 237 N.C. 29, 74 S.E. 2d 513. If the law were otherwise, a defendant could take his chance of acquittal on a trial on the merits and, if convicted, contend that he was not in court."

In *S. v. Sutton*, 244 N.C. 679, 94 S.E. 2d 797, the defendant challenged the right of the State to put him on trial in the Superior Court on warrants for speeding and reckless driving, on the ground that he had been arrested outside the corporate limits of the City of Kinston by a policeman of the City of Kinston, citing *Wilson v. Mooresville*, 222 N.C. 283, 22 S.E. 2d 907. This Court said:

> "We concur in what was said in the above case. Even so, we know of no authority that prohibits or bars a prosecution because the arrest was unlawful.
>
> "In 15 Am. Jur., Criminal Law, § 317, page 15, *et seq.*, it is said: 'As a general rule, the mere fact that the arrest of an accused person is unlawful is of itself no bar to a prosecution on a subsequent indictment or information, by which the court acquries jurisdiction over the person of the defendant.' *Kerr v. Illinois*, 119 U.S. 436, 30 L. Ed. 421; *S. v. May*, 57 Kan. 428, 46 P. 709; *Commonwealth v. Tay*, 170 Mass. 192, 48 N.E. 1086; *People v. Miller*, 235 Mich. 340, 209 N.W. 81; *People v. Ostrosky*, 95 Misc. 104, 34 N.Y. Crim. Rep. 396, 160 N.Y.S. 493; *S. v. McClung*, 104 W. Va. 330, 140 S.E. 55, 56 A.L.R. 257. For additional authorities in support of the above view, see Anno. 56 A.L.R. 260.
>
> "It is likewise said in 22 C.J.S., Criminal Law, § 144, page 236, *et seq.*: 'The illegal arrest of one charged with crime is no bar to his prosecution if all other elements necessary to give a court jurisdiction to try accused are present, a conviction in such a case being unaffected by such unlawful arrest.' "

The defendant herein makes no attack upon the warrant upon

which he was bound over to the Superior Court, or to the validity of the bill of indictment upon which he was tried.

The defendant expressly abandons all other assignments of error.

In our opinion, the defendant has had a fair trial, free from prejudicial error, and we so hold.

No error.