STATE v. ALLAN BELL, JR.

(Filed 12 April, 1967.)

**1. Criminal Law § 102—**

A fatal variance between indictment and proof may be raised by motion for nonsuit.

**2. Robbery § 4—**

Where the indictment charges defendant with armed robbery of property from a named person and the entire proof is that the property was taken from a person of a different name, there is a fatal variance between the indictment and proof, and nonsuit should be allowed.

**3. Criminal Law § 101—**

If there be substantial evidence of defendant's guilt of each essential element of the offense charged, regardless of whether the evidence is direct, circumstantial, or a combination of both, defendant's motion to nonsuit is properly overruled, it being for the jury to determine whether the evidence convinces them of defendant's guilt beyond a reasonable doubt and whether the circumstantial evidence excludes every reasonable hypothesis of innocence.

**4. Robbery § 4—**

The doctrine of recent possession obtains in prosecutions for robbery as well as in prosecutions for larceny and breaking and entering.

**5. Same—**

Evidence that a portion of the property taken by armed robbery from a named person was found not more than 25 minutes after the robbery in defendant's automobile, which had been described by the victim and which was being operated by defendant from the direction where the armed robbery occurred, and that a pistol of the same description as that given by the victim as being used in the perpetration of the robbery was in plain sight on the seat of the automobile, is sufficient to be submitted to the jury on the question of defendant's guilt of armed robbery, notwithstanding the evidence tended to show that the actual perpetrator of the offense was a passenger in the car.

**6. Searches and Seizures § 1—**

Where, upon defendant's objection to the admission in evidence of exhibits which were obtained from a search of defendant's automobile, the trial court, in the absence of the jury, hears the State's evidence as to the circumstances under which the search was made, and defendant

cross-examines the State's witness at length, but offers no evidence, although defendant had opportunity to do so, the ruling by the trial court that the evidence was competent is necessarily based on a finding that the search was legal, and the failure of the court to make specific findings of fact is not fatal.

**7. Same;   Criminal Law § 79;   Arrest and Bail § 3—**

Where some half hour after the perpetration of armed robbery an officer stops an automobile fitting the description of the one used in conjunction with the robbery and observes a pistol on the seat of the automobile, the officer may arrest the driver and owner of the car without a warrant, G.S. 15-41, and, as an incident to the arrest, may search the automobile without a search warrant, and incriminating exhibits found in the car are competent in evidence, G.S. 15-27.1, particularly when the exhibits were visible from outside the automobile without the necessity of a search.

**8. Criminal Law §§ 9, 10—**

A person who counsels, procures or commands another to commit a felony is guilty as an accessory before the fact, G.S. 14-5; a person who aids and abets in the commission of a crime is guilty as an aider and abettor.

**9. Robbery § 2—**

A person who aids or abets another in the commission of armed robbery is guilty under the provisions of G.S. 14-87, and it is not required that the indictment charge defendant with aiding and abetting.

APPEAL by defendant from *Froneberger, J.,* 7 November 1966 Regular Schedule "A" Criminal Session of MECKLENBURG.

Defendant was tried on bill of indictment No. 48215, charging the felony of robbery with firearms of Jean Rogers, and on indictment No. 48216, charging the felony of robbery with firearms of Frances Frazier. Defendant pleaded not guilty to both counts and the cases were combined for the purpose of trial.

The State presented evidence substantially as follows:

Susan Rogers testified that on the night of 12 October 1966, at about 9:30, she was returning to her home, and as she pulled into her driveway a white Chevrolet automobile stopped in front of her house. A man got out and the car drove off. As she was leaving her car the man walked up and said: "Don't make any noise or I will have to shoot you." He had a small silver gun in his hand. He asked if he could kiss her, to which she replied "No." The man then snatched her pocketbook and ran. She identified State's Exhibits 1 and 2 as being her pocketbook and the contents thereof which were taken from her on the night of 12 October 1966. She further testified that the man who robbed her was colored, but that she could not identify him. She was unable to identify or give the race of the man driving the automobile.

Frances Frazier testified that as she returned to her home on

the same evening, at around 11:15, she noticed a 1961 white Chevrolet Impala automobile following her. When she drove into her driveway she heard the other car stop in front of the house next door, and heard a car door slam. As she was about to leave her car she saw a man walking up the driveway towards her. She asked the man if he was looking for someone, and he replied, "Yes, you." She got out of the car, whereupon the man threatened her with a small silver snub-nosed gun, took her pocketbook, and ran. She further testified that prior to trial she had identified the man who robbed her in a police line-up as being James Edward Johnson. She identified State's Exhibit 4 as being her pocketbook, containing personal items belonging to her, and also identified State's Exhibit 5 as the silver gun which was used in the robbery.

S. A. Funderburk testified that on 12 October 1966 he was employed as a police officer by the Charlotte Police Department and was patrolling in the area of Statesville Avenue with other police officers. He further testified that in response to a radio dispatch he stopped a 1961 white Chevrolet automobile which was owned and was being driven by defendant Allan Bell, and in which James Edward Johnson was riding as a passenger. The automobile was stopped between 11:15 and 11:35 P.M., coming from the direction in which he had been advised a robbery with firearms had been committed. The officer testified that he got the two subjects out of the car, whereupon the defendant's attorney requested the court that he be allowed to qualify the witness out of the presence of the jury. The jury was sent from the courtroom and officer Funderburk was examined by defendant's attorney. He testified, in part, on *voir dire* that upon stopping the white Chevrolet he had the two men get out, and he observed firearms on the seat of the car. One of the pistols, identified as State's Exhibit 5, was lying near the center of the front seat of the automobile. He stated that he could see this pistol while standing on the outside of the automobile, and that he also found a lady's purse, which was identified as State's Exhibit 4, lying on the back floorboard of the car. The officer testified that he could see the purse from outside the car also. The other pistol was found between the left end of the front seat and the floor mat.

At the conclusion of the examination by defendant's attorney the court stated, "I will overrule your objection." The defendant offered no evidence during the *voir dire* examination. There was further testimony by officer Funderburk that immediately upon removing the pocketbook and pistols from the automobile, defendant Bell was put under arrest. James Johnson broke away from the officer and ran, but was apprehended a short time later. Several hours later, the officers obtained a search warrant for the purpose

STATE *v.* BELL.

of searching defendant Bell's home, and upon searching it found a pocketbook and contents of the pocketbook which were introduced into evidence at the trial and identified as State's Exhibits 1 and 2, and further identified as being the property taken from Susan Rogers.

Defendant testified in his own behalf and stated that on the night in question he and James Johnson went to a club called the Atmosphere Club at around 8:00 o'clock to play whist, and at about 8:30 his cousin, Frank Bell, came to the club and borrowed defendant Bell's car. He further testified that Frank Bell and James Johnson left in his automobile, and that sometime thereafter he walked to his home, which was about three blocks away, and found Frank Bell and James Johnson inside his house. He then walked back to the Atmosphere Club and stayed there until about 11:00 o'clock, when he got a bus to the place where his girl friend worked. From there he and the girl took a cab to her house, where Johnson came and picked him up; that while driving his automobile from his girl friend's house he was stopped and arrested by the police.

James Edward Johnson testified substantially to the same facts as did Bell and admitted that it was he who committed the robberies, and that Frank Bell, and not Allan Bell, was the person who was operating the automobile when the robberies were committed.

The jury returned a verdict of guilty of armed robbery as charged in bill of indictment No. 48215, and guilty of armed robbery as charged in bill of indictment No. 48216. Sentence of 15 years was imposed in case No. 48215, and sentence of 10 years was imposed in case No. 48216, to commence at the expiration of the sentence given in case No. 48215. Defendant appealed.

*Attorney General Bruton and Staff Attorney Vanore for the State.*

*Francis O. Clarkson, Jr., for defendant, appellant.*

BRANCH, J. Bill of indictment No. 48215 charges that:

"Allen Bell, Jr., late of the County of Mecklenburg on the 12th day of October, 1966, with force and arms at and in the county aforesaid, unlawfully, wilfully, and feloniously, having in his possession and with the use and threatened use of firearms and other dangerous weapons, implements, and means, to wit: A pistol whereby the life of Jean Rogers was endangered and threatened, did then and there unlawfully, wilfully, forcibly, violently and feloniously take, rob, steal, 1 Timex watch, 1 high school pen, and 1 pair ear bobs, the property of Jean

Rogers and carry away 1 brown purse, 1 blue billfold, 1 pair eyeglasses, 1 citadel charm bracelet to-wit: $60.00 of the value of less than $200 from the presence, person, place of business, and residence of Jean Rogers contrary to the form of the statute in such case made and provided and against the peace and dignity of the State."

There is a fatal variance between the indictment and the proof on this record. The indictment in bill No. 48215 charges that "Jean" Rogers was the person robbed. The entire proof and the record is that the person robbed was "Susan" Rogers.

The defendant in a criminal action may raise the question of variance between the indictment and proof by a motion for nonsuit. *State v. Overman,* 257 N.C. 464, 125 S.E. 2d 920; *State v. Smith,* 237 N.C. 1, 74 S.E. 2d 291. Here, defendant made motion for nonsuit at the close of the State's evidence and at the close of all the evidence. The motion for judgment of nonsuit should have been allowed as to the charge under this indictment, with leave to the solicitor to secure another bill of indictment if so advised. *State v. Hicks,* 233 N.C. 31, 62 S.E. 2d 497; *State v. Overman, supra.*

This opinion will hereafter be directed to the trial on bill of indictment No. 48216, which charges defendant Allan Bell, Jr., with the felony of robbery with firearms of Frances Frazier.

Defendant assigns as error that the trial court erred in denying his motion for nonsuit. This is a case in which the State relies upon circumstantial evidence. To determine whether there is sufficient evidence to go to the jury we must consider the evidence in the light most favorable to the State, *State v. Orr,* 260 N.C. 177, 132 S.E. 2d 334, and apply the rule enunciated in *State v. Stephens,* 244 N.C. 380, 93 S.E. 2d 431, as follows:

"We are advertent to the intimation in some of the decisions involving circumstantial evidence that to withstand a motion for nonsuit the circumstances must be inconsistent with innocence and must exclude every reasonable hypothesis except that of guilt. We think the correct rule is given in *S. v. Simmons,* 240 N.C. 780, 83 S.E. 2d 904, quoting from *S. v. Johnson,* 199 N.C. 429, 154 S.E. 730: 'If there be any evidence tending to prove the fact in issue or which reasonably conduces to its conclusion as a fairly logical and legitimate deduction, and not merely such as raises a suspicion or conjecture in regard to it, the case should be submitted to the jury.' The above is another way of saying there must be substantial evidence of all material elements of the offense to withstand the

motion to dismiss. It is immaterial whether the substantial evidence is circumstantial or direct, or both. To hold that the court must grant a motion to dismiss unless, in the opinion of the court, the evidence excludes every reasonable hypothesis of innocence would in effect constitute the presiding judge the trier of the facts. Substantial evidence of guilt is required before the court can send the case to the jury. Proof of guilt beyond a reasonable doubt is required before the jury can convict. What is substantial evidence is a question of law for the court. What that evidence proves or fails to prove is a question of fact for the jury. (Citing cases)."

It is recognized in this State that: "If and when it is established that a store has been broken into and entered and that merchandise has been stolen therefrom, the recent possession of such stolen merchandise raises presumptions of fact that the possessor is guilty of the larceny *and* of the breaking and entering." *State v. Allison,* 265 N.C. 512, 144 S.E. 2d 578. However,

" 'The presumption that the possessor is the thief which arises from the possession of stolen goods is a presumption of fact and not of law, and is strong or weak as the time elapsing between the stealing of the goods and the finding of them in the possession of the defendant is short or long. This presumption is to be considered by the jury merely as an evidential fact, along with the other evidence in the case, in determining whether the State has carried the burden of satisfying the jury beyond a reasonable doubt of the defendant's guilt. The duty to offer such explanation of his possession as is sufficient to raise in the mind of the jury a reasonable doubt that he stole the property, or the burden of establishing a reasonable doubt as to his guilt, is not placed on the defendant, however recent the possession by him of the stolen goods may have been.' — Schenck, J., in *S. v. Baker,* 213 N.C. 524, 196 S.E. 829." *State v. Holbrook,* 223 N.C. 622, 27 S.E. 2d 725.

If there be substantial evidence of every essential element that goes to make up the offense charged, the case is for the jury.

A majority of the cases which have considered the doctrine of "recent possession" in this jurisdiction have been cases involving breaking, entering and larceny. However, we find no valid reason why the rule does not apply to property taken in a robbery with firearms in the same manner as property taken by breaking and entering.

"When a proper foundation has been laid, evidence that the property taken in the robbery in question was, or that the fruits thereof were, found in the possession of the accused shortly thereafter is admissible against him, in accordance with and subject to the rules governing the admissibility of evidence of the possession of the fruits of crime generally." 46 Am. Jur., Robbery, § 48, p. 160.

In the instant case a portion of the property taken in the armed robbery of Frances Frazier was found not more than 25 minutes after the robbery occurred in defendant's automobile, which was being operated by defendant from the direction where the armed robbery occurred. Defendant Bell was accompanied by James Johnson, the person identified by the victim Frances Frazier, as holding the gun on her and taking her property. A pistol of the same description given by the victim of the robbery as being used in the robbery was in plain sight in defendant's automobile. Applying the well established rules of law to the facts in this case, we hold that the evidence was sufficient to require submission to the jury and to support the verdict.

Appellant contends the trial judge erred in allowing testimony as to State's Exhibits 4, 5 and 6, which were obtained in the search of defendant's automobile, and in failing to find facts upon which the legal conclusion of the admissibility of this testimony was based.

When Officer Funderburk was testifying, defendant's attorney asked that he be allowed to qualify the officer out of the presence of the jury. Whereupon, the jury was excused and defendant's attorney cross-examined the officer at length. Both the State and defendant had opportunity to offer evidence showing the circumstances under which the search was made. Defendant offered no evidence. By overruling defendant's objection, the trial judge ruled the evidence admissible, and this ruling is supported by competent evidence.

When the trial court finds upon consideration of all the testimony offered on the preliminary inquiry that a confession was voluntarily made, his finding is not subject to review, if supported by competent evidence. *State v. Hairston,* 222 N.C. 455, 23 S.E. 2d 885. While it is better practice for a judge on *voir dire* to make finding of fact and enter it in the record, a failure to do so is not fatal. The ruling that the evidence was competent was of necessity bottomed on the finding that the search was legal. *State v. Litteral,* 227 N.C. 527, 43 S.E. 2d 84.

The court fully granted defendant's requests concerning a *voir dire.* The fact that defendant offered no contradictory evidence

further negated the necessity for the judge to find facts. We hold there was no prejudicial error in the court's failure to find facts in making its ruling.

We must, however, decide as a matter of law whether the circumstances of this case constitute an illegal search so as to prevent testimony relative to State's Exhibits 4, 5, and 6.

G.S. 15-27.1 provides in part: "No facts discovered or evidence obtained by reason of the issuance of an illegal search warrant or without a legal search warrant in the course of any search, made under conditions requiring a search warrant, shall be competent as evidence in the trial of any action."

> "To render evidence incompetent under the foregoing section, it must have been obtained (1) 'in the course of . . . search,' (2) 'under conditions requiring a search warrant,' and (3) without a legal search warrant. The purpose of this and similar enactments (G.S. 15-27) was 'to change the law of *evidence* in North Carolina, and not the substantive law as to what constitutes legal or illegal search.' Therefore a search that was legal without a warrant before these enactments is still legal, and evidence so obtained still competent. 30 N.C. Law Review 421. It will be noted that the statutes use the phrase 'under conditions requiring a search warrant.' No search warrant is required where the officer 'sees or has absolute personal knowledge' that there is intoxicating liquor in an automobile. *State v. Giles*, 254 N.C. 499, 119 S.E. 394; *State v. Hammonds*, 241 N.C. 226, 85 S.E. 2d 133. No search warrant is required where the owner or person in charge consents to the search. *State v. McPeak*, 243 N.C. 243, 90 S.E. 2d 501." *State v. Coffey*, 255 N.C. 293, 121 S.E. 2d 736.

If the search was incidental to the arrest of defendant, it was not illegal. Webster's Third New International Dictionary defines "incidental" as "subordinate, nonessential, or *attendant* in position or significance."

In *State v. Haney*, 263 N.C. 816, 140 S.E. 2d 544, officers within twenty minutes of a lawful arrest searched the car in which defendant was at the time of the arrest. Holding the search lawful, the Court said:

> " 'As incident to a lawful arrest, the conveyance of the person arrested may be searched without a warrant. Accordingly, a search warrant is not necessary to authorize a search of an automobile in which a person was riding or beside which he

was standing when arrested, and an officer, after arresting and incarcerating accused, may return and make a search of his automobile.' 79 C.J.S., Searches and Seizures § 67e ( 1952); Cf. *State v. Giles*, 254 N.C. 499, 119 S.E. 2d 394."

A review of other jurisdictions shows that many of the cases turn on whether or not the officer had reasonable cause to arrest the defendant and as an incident to the arrest were entitled to search defendant's car. In the case of *People v. Cantley*, 163 Cal. App. 2d 762, 329 P. 2d 993, police officers saw defendant stop his car in front of an apartment house and enter the house for about two or three minutes and upon his return he made a "U" turn to drive away. The officers stopped the car and saw him make a motion as if he were reaching under the front seat, and further observed that he met, to some extent, the description of a person wanted in connection with a robbery and murder. One of the officers flashed his light into the car and found a loaded revolver on the floorboard. The Court concluded that the officers acted reasonably in the light of the information they had received, and that they entertained a reasonable suspicion that defendant had committed a felony, and they had reasonable cause to arrest the defendant, and as an incident to the arrest they were entitled to search defendant's car.

In the case of *State v. Brooks*, 57 Wash. 2d 422, 357 P. 2d 735, officers saw an automobile with two occupants parked in a no-parking zone and stopped to investigate. Upon opening the door they saw some paper bags in the car with uncovered trousers protruding from them. The bags were opened and four new suits were found, with sales tags still upon them, whereupon the officers arrested the occupants. It was held that since it appeared from the record that the officers had sufficient cause to believe that a felony had been or was being committed, they had a right to arrest them without a warrant, and therefore the search of the paper bags and the seizure of the contents before the arrest of the occupants was lawful.

In *U. S. v. Sala*, (1962 D.C. Pa.), 209 F. Supp. 956, it was held that a search without a warrant of a panel truck was legal, although it preceded the arrest of the driver, when officers making the search had probable cause therefor, by reason of facts and circumstances known to them, which would have warranted a prudent man to believe that a felony had been or was being committed in his presence.

In the present case, when the officers stopped the automobile fitting the description of the one used in conjunction with the robbery and observed the pistol on the seat of the automobile, they

had reasonable ground to believe that defendant had committed a felony and would evade arrest if not taken into custody. G.S. 15-41. The search and seizure were so closely related in time and circumstance to the arrest as to make the search and seizure reasonable. Under the circumstances, the officers would have been derelict had they not stopped the car for investigation. Upon observing the pistol in the automobile, the bounds of reasonableness were not overstepped by placing the defendant under arrest or by the attendant and incidental search of the automobile.

Moreover, it has been recognized in this jurisdiction that " 'Where no search is required, the constitutional guaranty is not applicable. The guaranty applies only in those instances where the seizure is assisted by a necessary search. It does not prohibit a seizure without a warrant where there is no need of a search, and where the contraband subject matter is fully disclosed and open to the eye and hand.' " *State v. Giles,* 254 N.C. 499, 119 S.E. 2d 394.

There is competent evidence from the officers that the pistol and pocketbook were visible from the outside of the automobile and were fully disclosed and open to the eye without the necessity of search.

Defendant contends that the court erred in charging. the jury that they could find the defendant guilty if they found he aided and abetted in the commission of armed robbery, because the indictment does not charge defendant with aiding and abetting.

A defendant may be tried and convicted as a principal where he either counsels, procures or commands another to commit a felony, as an accessory before the fact, G.S. 14-5, or aids and abets in the commission of the crime, *State v. Peeden,* 253 N.C. 562, 117 S.E. 2d 398. He need not be actually present; he may be only constructively present. See *State v. Sellers,* 266 N.C. 734, 147 S.E. 2d 225, where the Court states:

> " 'When two or more persons aid and abet each other in the commission of a crime, all are principals and equally guilty.' *State v. Horner,* 248 N.C. 342, 103 S.E. 2d 694. The defendant not only collaborated with Yopp in planning and setting the stage for the robbery and in escaping with the stolen money, but also waited and watched, armed with a pistol, near enough to the scene to render aid if needed. Thus, he was constructively present when the robbery actually occurred and is guilty as a principal in the second degree."

G.S. 14-87 provides:

> "Any person or persons who, having in possession or with

the use or threatened use of any firearms or other dangerous weapon, implement or means, whereby the life of a person is endangered or threatened, unlawfully takes or attempts to take personal property from another or from any place of business, residence or banking institution or any other place where there is a person or persons in attendance, at any time, either day or night, or who aids or abets any such person or persons in the commission of such crime, shall be guilty of a felony and upon conviction thereof shall be punished by imprisonment for not less than five nor more than thirty years."

This statute creates no new offense. "It does not add to or subtract from the common law offense of robbery except to provide that when firearms or other dangerous weapons are used in the commission of the offense, more severe punishment may be imposed." *State v. Hare,* 243 N.C. 262, 90 S.E. 2d 550; *State v. Stewart,* 255 N.C. 571, 122 S.E. 2d 355. Thus, it was not necessary for the bill of indictment to charge defendant with aiding and abetting, and the charge of the court was without error.

As to trial under Indictment No. 48215—Reversed.

As to trial under Indictment No. 48216—No error.