STATE OF NORTH CAROLINA v. FRANK LEVITT BASDEN

No. 7018SC344

(Filed 24 June 1970)

1. **Arrest and Bail § 3— arrest without warrant — armed robbery — lawfulness of arrest**

The entry of police officers into the house in which the defendant and his companions were hiding, and the arrest without warrant of the occupants therein for the offense of armed robbery, *held* proper and lawful, where (1) the felony of armed robbery had been committed at an ABC

store, (2) within a few minutes after the robbery the officers discovered in the driveway of the house the automobile which they reasonably believed had been used in the robbery, (3) all curtains on the windows of the house were drawn, and (4) the occupants of the house failed to respond to the officers' knock at the front door. G.S. 15-41(2), G.S. 15-44.

**2. Arrest and Bail § 3— arrest without warrant — lawfulness of arrest**

The arrest without warrant of the defendant for armed robbery, the defendant having been discovered hiding in the attic of a house, *held* lawful where the discovery and arrest of the defendant occurred after the owner of the house had admitted the officers by the front door. G.S. 15-41(2).

**3. Searches and Seizures § 1— search incident to valid arrest**

The warrantless search of the defendant's person which was made by officers after the defendant's lawful arrest and which resulted in the discovery of money taken from an ABC store, *held* incident to a valid arrest and came within the constitutional limitations for a valid warrantless search.

**4. Criminal Law § 77— statement made during the search of defendant's person — admissibility**

Defendant's statement to a police officer, made during a search of defendant's person, that the money taken from his right front pocket was "yours" and the money in the right rear pocket was "his," which statement was volunteered to the officer after defendant's arrest for armed robbery, *held* admissible on the trial of defendant for armed robbery.

**5. Criminal Law § 84— objection to evidence obtained by search and seizure — procedure for admissibility**

When a defendant in a criminal case objects to the admissibility of the State's evidence on the ground that it was obtained by unlawful search, the proper procedure to be followed by the trial court is the same as required for determining the admissibility of evidence as to a confession.

**6. Criminal Law § 84— voir dire into lawfulness of search — failure to make findings of fact**

Failure of the trial court to make findings of fact following a *voir dire* hearing into the admissibility of evidence obtained by a warrantless search, *held* not fatal where there was no conflict in the evidence on the *voir dire*.

**7. Criminal Law §§ 76, 84— voir dire — conflicting evidence — findings of fact**

When conflicting evidence is offered at a *voir dire* hearing held to determine the admissibility of evidence, the trial judge must make findings of fact to show the basis of his rulings on the admissibility of the evidence offered.

APPEAL by defendant from *Collier, J.,* 17 November 1969 Session of GUILFORD Superior Court.

The defendant, Frank Levitt Basden (Basden), and Dwight Anthony White and Johnny Douglas Hunter, Jr., were charged in bills of indictment with the offense of armed robbery, a violation of G.S. 14-87. Basden pleaded not guilty. Testimony of the State's witnesses, including their accounts of what the defendant related to them, tends to establish the following factual setting for this case: On the morning of 28 October 1969 Basden was riding around in Greensboro, N. C., with Messrs. White and Hunter, together with Robert Carr and one Johnson. The five men decided to rob an ABC store. They parked Carr's black and white Chevrolet (title to which was later found to be registered in the name of Carr's father but which was being driven by Robert Carr) on the street in the vicinity of the residence of one Betty Jones and transferred to a white Buick convertible. A rifle was taken from the trunk of the Chevrolet and placed in the Buick. This was observed by Betty Jones, who promptly called the police, giving them the license number of the Buick and describing the suspicious circumstances which she had observed. Officer Pegram arrived and checked the parked Chevrolet. Meanwhile, the five men drove in the Buick to the ABC store at the Southgate Shopping Center, arriving about 11:00 a.m. Johnson and White went into the store while the others waited outside in the Buick. Johnson had a .38 pistol. Hunter later went inside with a .22 caliber rifle. The three men who entered the store ordered the store clerks at gunpoint to open the cash registers. They took cash from the registers and then all five men fled from the scene with the stolen currency and coins and rode in the white Buick convertible back to the parked Chevrolet, where they again switched cars, leaving the white Buick convertible parked. They then drove the Chevrolet to Carr's home in Greensboro, where the money was divided among the five participants in the robbery. Betty Jones had observed the black and white Chevrolet being driven away from the place it had been parked in the street near her home and again called officers.

Officers in the area had been alerted that the robbery had taken place and that the robbers had fled the scene of the robbery in a white Buick convertible. As a consequence of this information and the information given them by Betty Jones, the officers found the parked Buick and began searching for the black and white Chevrolet. Between 11:15 and 11:30 a.m., Detective Andrews spotted the Chevrolet in the driveway of Carr's residence, positively identifying it. He also noted that all windows at the residence were closed and all curtains were drawn. Some four police cars carrying officers arrived at the scene and Detective Andrews ordered the officers to

move in. Uniformed policemen and detectives went to the front of the house and knocked at the door. Sergeant Pegram, after observing the officers knocking at the front door, walked around to the back door, which was closed but not locked. He heard some scuffling inside, opened the door and entered the house. He first encountered Robert Carr, who was standing in the hallway adjacent to the kitchen and dining area. He informed Carr that he was under arrest. Carr, however, eluded Officer Pegram and got away down the hall and into the living room. Testimony indicates that Carr then went to the front door, opened it, and ran into the arms of the police on the front porch. In the meantime, Sergeant Pegram had come face to face with White, who was standing in the hall near a small table. Pegram immediately placed White under arrest.

Policemen entering the Carr residence then noticed that there were marks on the wall near the small table and under the trap door leading to the attic. The plywood panel in the ceiling was pushed back and a slight sound was heard in the attic. Officers warned the suspected occupants of the attic that tear gas would be used if they did not come down. At this time defendant Basden and Johnson appeared and were brought down through the trap door. A tear gas bomb was readied and the other occupant of the attic was ordered to come out. After tear gas was shot into the attic and after a small fire which the gas bomb started was put out, Hunter was found attempting to hide under some insulation near the end of the attic. A .38 pistol was also found in the attic.

Basden was placed under arrest immediately on being brought down from the attic. As he was being led from the residence, he was searched by Sergeant Booth of the Greensboro Police Department. Some $438.00 was removed from his right front pocket and $158.00 was removed from his right rear pocket. Basden told Officer Booth that the money in his right front pocket was "yours" and the money in the right rear pocket was "his." Basden had not been questioned at this point, and volunteered the remark as the money was being removed from his person during the initial search. At the time the officers entered the Carr residence they did not have a search warrant nor did they have a warrant for the arrest of any of the occupants.

Following his arrest Basden was taken to the Greensboro Police Department. After receiving *Miranda* warnings, he initially made one statement, only to change his statement after a short time in jail. He was again given the *Miranda* warnings before making the second statement. In his second statement Basden admitted to

Detective Hart substantially what has been summarized above. He declined to have a lawyer present during the period in which he made his admissions but requested that an attorney be provided for him at trial.

During the course of the trial, Hunter and White changed their pleas to guilty of armed robbery, and the jury was told to consider the case only as it applied to Basden. Basden offered no evidence at the trial and was found guilty of armed robbery. From prison sentence of 24 to 30 years imposed on the verdict, he appeals to this Court, assigning as error that facts discovered and evidence obtained as a result of an allegedly illegal search and seizure were admitted into evidence at his trial.

*Attorney General Robert Morgan and Staff Attorney James L. Blackburn for the State.*

*Joseph D. Franks, Jr., for defendant appellant.*

PARKER, J.

[1] All of appellant's assignments of error are directed to the trial court's rulings overruling his objections to testimony of the police officers concerning who and what they discovered in the Carr residence, including particularly the testimony as to the discovery of the defendant himself therein, the discovery of the money in his pockets, and his incriminating statement concerning the money. All of the assignments of error are based upon appellant's contention that the search of the Carr residence, which was admittedly made without a search warrant, was illegal and that therefore all evidence obtained as a result of the search was inadmissible at the trial. The validity of this contention presents the sole question to be decided on this appeal.

G.S. 15-44 provides as follows:

"If a felony or other infamous crime has been committed, or a dangerous wound has been given and there is reasonable ground to believe that the guilty person is concealed in a house, it shall be lawful for any sheriff, coroner, constable, or police officer, admittance having been demanded and denied, to break open the door and enter the house and arrest the person against whom there shall be such ground of belief."

G.S. 15-41(2) provides as follows:

"A peace officer may without warrant arrest a person:"

       *       *       *       *       *

"(2) When the officer has reasonable ground to believe that the person to be arrested has committed a felony and will evade arrest if not immediately taken into custody."

In this case the crime of armed robbery, a felony, had been committed. Because of the alertness of the witness, Betty Jones, in observing and making prompt report to the police concerning the suspicious activities of defendant Basden and his companions, and because of the prompt and effective action of the police themselves, the Chevrolet car, which the police had reasonable grounds to believe had been used by the robbers, was located in the driveway to Carr's residence only a few minutes after the robbery occurred. All curtains on the residence windows were drawn. Under these circumstances the police clearly had reasonable ground to believe that the persons guilty of committing the felony were concealed in the house. Uniformed police officers, some of whom had arrived in front of the house in clearly marked police patrol cars, went to the front door and knocked, thereby seeking admittance. Failure of the occupants to respond to the request for admittance would constitute an effective denial of the request. Only after these events occurred did Sergeant Pegram proceed to the unlocked back door, open it, and enter the house. Thus, uncontradicted evidence in this case establishes the existence of all of the factors required by G.S. 15-44 for a lawful entry and arrest.

[2] Furthermore, the uncontradicted evidence establishes that the owner of the residence, Robert Carr, opened the front door from the inside, thereby admitting into the residence the officers who had been standing at the front door demanding admittance. It was after these officers had entered the residence through the door opened to them by the householder himself that the defendant Basden was found concealed in the attic. Under the circumstances of this case we hold that Basden's arrest was also lawful under G.S. 15-41(2).

[3, 4] The search of defendant's person made by the officers as he was being led from the residence and which resulted in discovery of the money in his pockets was incident to a valid arrest and came within the constitutional limitations for a valid warrantless search, set forth in *Chimel v. California,* 395 U.S. 752, 23 L. Ed. 2d 685, 89 S. Ct. 2034. The uncontradicted evidence discloses that the statement made by the defendant as to ownership of the money in his pockets was volunteered by him and was not made in response to any interrogation by the police. We find no error in the trial court's admissions of evidence, and all of appellant's assignments of error brought forward on this appeal are overruled.

Appellant has made no assignment of error to the admission of testimony as to his statement made to the police in which he fully confessed to his part in committing the robbery. This testimony was admitted only after the trial court had properly held a *voir dire* hearing from which the court found as facts that the defendant had been properly forewarned of his constitutional rights as required by *Miranda* and that defendant's statement had been voluntarily and understandingly made.

[5-7]  When a defendant in a criminal case objects to the admissibility of the State's evidence on the ground that it was obtained by unlawful search, the proper procedure to be followed by the trial court is the same as required for determining the admissibility of evidence as to a confession. *State v. Pike,* 273 N.C. 102, 159 S.E. 2d 334; *State v. Wood,* 8 N.C. App. 34, 173 S.E. 2d 563; *State v. Fowler,* 3 N.C. App. 17, 164 S.E. 2d 14. In the present case, when defendant objected to the testimony of the police officers concerning what they observed in the Carr residence, the trial court properly held a *voir dire* hearing in the absence of the jury relative to the circumstances under which the officers had entered the building. The court failed, however, to make findings of fact in this regard, but at the conclusion of the *voir dire* hearing merely overruled defendant's objections. When conflicting evidence is offered at a *voir dire* hearing held to determine the admissibility of evidence, the trial judge must make findings of fact to show the basis of his rulings on the admissibility of the evidence offered. *State v. Moore,* 275 N.C. 141, 166 S.E. 2d 53. While it is the better practice for the trial judge to make findings of fact and enter them in the record in all such cases, where, as here, there was no conflict in the evidence at the *voir dire,* the trial judge's failure to make findings of fact is not fatal. *State v. Bell,* 270 N.C. 25, 153 S.E. 2d 741; *State v. Keith,* 266 N.C. 263, 145 S.E. 2d 841; see also *State v. Williams,* 274 N.C. 328, 163 S.E. 2d 353.

In the defendant's trial and the judgment appealed from we find No error.

CAMPBELL and VAUGHN, JJ., concur.