STATE OF NORTH CAROLINA v. LARRY WAYNE SHUE, ALIAS
BROTHER SHUE
STATE OF NORTH CAROLINA v. CARL WILLIAM SHUE, JR., ALIAS
MONKEY SHUE

No. 7220SC719

(Filed 20 December 1972)

1. Criminal Law § 91— motion to continue — denial proper

Defendants failed to show that the trial judge abused his discretion in denying their motion to continue made on 22 May 1972 where they filed no affidavits in support of the motion, but the record did show that counsel learned of his appointment on 5 May 1972 and that the case had been continued once before on motion of defense counsel from 15 May to 22 May.

2. Criminal Law § 84; Searches and Seizures § 1— entry under arrest warrant — seizure of watch in plain view — admissibility

A wrist watch allegedly taken from the victim of an armed robbery and found in defendants' premises was properly admitted into evidence where it appeared on *voir dire* that officers, in an attempt to make an arrest pursuant to a valid warrant, entered the premises and seized the watch which was lying in plain view.

3. Arrest and Bail § 5— probable cause to search for concealed person

The trial judge's finding that officers had probable cause to believe that one Wright was in defendants' premises when the officers

State v. Shue

entered to search for him was supported by plenary competent evidence and hence was binding on appeal.

4. **Arrest and Bail § 5— arrest with warrant — necessity for demanding and being denied entrance**

Even though officers had warrants for the arrest of the defendants and one Wright and had reasonable grounds to believe that Wright was in defendants' premises, it was necessary that the officers first demand and be denied admittance before they could lawfully enter the premises.

5. **Arrest and Bail § 5— arrest with warrant — actions constituting demand for and denial of admittance**

Where officers armed with arrest warrants surrounded defendants' premises and ordered the occupants to come out, arrested the two defendants who came out, sprayed tear gas into the house when a third person failed to come out, and then entered the house to search for the third person, actions of the officers were sufficient to advise any occupant of their official status and satisfied any requirement that admittance be demanded and denied.

APPEAL by defendants from *Webb, Judge,* 22 May 1972 Special Session of Superior Court held in STANLY County.

The defendants, Larry Wayne Shue, alias Brother Shue, and Carl William Shue, Jr., alias Monkey Shue, were charged in a joint bill of indictment, proper in form, with the armed robbery of Roy Alvis Coats. Defendants pleaded not guilty. The material evidence offered by the State tended to show the following:

On 9 March 1972 Roy Alvis Coats, owner of a three-room building at Lake Tillery known as Shark's Place, opened and began selling beer and liquor to five men. At about 9:00 p.m., Larry Wayne Shue (Larry Shue) and Carl William Shue, Jr., (Carl Shue) arrived and purchased two beers. Defendants left then re-entered carrying two sawed-off shotguns which they aimed at Coats and the other men in the premises. Defendant Carl Shue stated, "This is it." "You are dead. If you move you will get a load of buckshot." Coats and the five other men were then told to lie on the floor and defendant Larry Shue removed approximately $1,100 from Coats' pockets and wallet, while aiming a pistol at his head. Coats stated, "Another fellow came in in the meantime and had a mask on and also had a shotgun." Larry Shue then asked Coats where the rest of the money was, and Coats told him that he had no more. Coats stated that he moved his head slightly and "When I did Larry he stomped me in the back of the head 2 or 3 times pretty hard, as hard as he

could stomp me." Larry Shue then made Coats remove his clothing and crawl from behind the counter to where the other men were lying. Upon being asked by Carl Shue whether there were any more guns in the premises, Coats replied negatively; whereupon, "They said they found a rifle and they said just go ahead and kill that son of a bitch for lying . . . ." One of the defendants then struck Coats in the back of the head two or three times with the butt end of a rifle or shotgun. The defendants told Coats and the five other men to lie on the floor for ten minutes. Coats testified, "They was going around singing a song. Singing a song made up saying, 'Don't raise your head or you will be dead,' and saying, 'It's all over but the crying,' and stuff like that." Coats was bleeding "pretty bad" and after two or three minutes, when Junius Archer, a patron, raised his head to determine the extent of Coats' injuries, "One of them opened the door and shot him through the shoulder and into the neck." Coats waited a few more minutes, then got up and telephoned for an ambulance and the Sheriff's Department.

The following other property was taken from Coats by the defendants on this occasion: a .38 caliber Colt pistol; a Bulova wrist watch with the following engraved on its back, "R A C love L R C" (State's exhibit 3) ; a pocket knife; and a hunting knife.

Defendants offered no evidence and were found guilty as charged. From judgments imposing prison sentences of 30 years each, defendants appealed.

*Attorney General Robert Morgan and Associate Attorney Edwin M. Speas, Jr., for the State.*

*Coble, Morton & Grigg by Ernest H. Morton, Jr., for defendant appellants.*

HEDRICK, Judge.

[1]  Defendants assign as error the court's denial of their motion to continue made on 22 May 1972.

Motions to continue are addressed to the sound discretion of the trial judge and his rulings thereon will not be upset on appeal absent a showing of such abuse of discretion as would deprive the defendants of a fair trial. *State v. Gibson,* 229 N.C. 497, 50 S.E. 2d 520 (1948); *State v. Lewis,* 7 N.C. App. 178, 171 S.E. 2d 793 (1970), cert. denied 276 N.C. 328 (1970). De-

fendants' motion was not supported by affidavit. The record, however, does contain counsel's statements when he made the motion to the effect that he was appointed to represent the defendants on 1 May 1972 and that he learned of this appointment on 5 May 1972 and that the case had been continued on motion of defense counsel from 15 to 22 May 1972. Counsel for defendants argues that he did not have sufficient time to adequately prepare for the trial of this case. Defendants have failed to show that the trial judge abused his discretion in denying the motion to continue.

[2] Defendants assign as error the admission into evidence of State's exhibit 3, a Bulova wrist watch, found in defendants' premises.

> "When a defendant in a criminal case objects to the admissibility of the State's evidence on the ground that it was obtained by unlawful search, the proper procedure to be followed by the trial court is the same as required for determining the admissibility of evidence as to a confession. *State v. Pike,* 273 N.C. 102, 159 S.E. 2d 334; *State v. Wood,* 8 N.C. App. 34, 173 S.E. 2d 563; *State v. Fowler,* 3 N.C. App. 17, 164 S.E. 2d 14." *State v. Basden,* 8 N.C. App. 401, 174 S.E. 2d 613 (1970).

Upon defendants' motion to suppress the evidence resulting from a search of defendants' residence, the court conducted a *voir dire* hearing in the absence of the jury regarding the entry and search of defendants' premises. The court heard testimony of Ralph L. McSwain, Sheriff of Stanly County and Jack Coppley, State Bureau of Investigation, (the defendants offered no evidence) and made the following pertinent findings and conclusions:

> "1. That Sheriff Ralph McSwain and Jack Coppley and other law enforcement officers went to 49 Crestwell Place, Concord, North Carolina, with warrants for the arrest of the defendants and Franklin DeWayne Wright.
>
> 2. That they had probable cause to believe that Franklin DeWayne Wright was inside the premises at 49 Crestwell Place, Concord, North Carolina.
>
> 3. That the defendants came outside the premises at 49 Crestwell Place, Concord, North Carolina, and were placed under arrest. The law enforcement officers on the

scene had probable cause to believe that Franklin DeWayne Wright was inside the premises and they entered the premises to search for him. While inside the premises they saw the watch which has been offered into evidence as State's Exhibit '3' in plain view on the mantel in the living room. . . .

THE COURT, THEREFORE, FINDS that the watch offered in evidence as State's Exhibit '3' should be received in evidence as a search warrant was not required for it. . . ."

Defendants argue the officers' entry into their premises was unlawful. They first contend, "there was no evidence that a felony had been committed."

A police officer in making an arrest pursuant to a warrant charging a criminal offense has authority to enter the dwelling occupied by the person whose arrest is directed, even during the nighttime. *State v. Shook*, 224 N.C. 728, 32 S.E. 2d 329 (1944) ; *State v. Mooring*, 115 N.C. 709, 20 S.E. 182 (1894) ; 1 Strong, N. C. Index 2d, Arrest and Bail § 5, p. 277. The trial judge's finding that the officers had warrants for the arrest of defendants and Wright obviated the necessity of a finding that a felony had been committed.

[3]  Defendants next contend, "there was no reasonable grounds for the officers to believe that the guilty person was concealed in the house." The trial judge's findings that the officers had probable cause to believe that Wright was in the premises when they entered to search for him is supported by plenary competent evidence. Such findings, when supported by competent evidence, are binding on appeal. *State v. Pike, supra.* The evidence tended to show that when the officers from the Cabarrus County Sheriff's Department, Concord Police Department, Stanly County Sheriff's Department, Mecklenburg County Police and the State Bureau of Investigation went to defendants' premises at 49 Crestwell Place, Concord, shortly after midnight on 21 March 1972, they had warrants for the arrest of the defendants and Franklin DeWayne Wright (Wright), a declared outlaw. They had information and believed that the defendants were in their premises and that they had been harboring Wright therein.

[4, 5]  Further the defendants contend that "the record is devoid of any evidence whatever that any demand was ever made by any officer to enter the Shue premises." We do not agree.

State v. Shue

This contention raises two questions: (1) Even though the officers had warrants for the arrest of the defendants and Wright and had reasonable grounds to believe that Wright was in the Shue premises, was it necessary that they first demand and be denied admittance before they could lawfully enter the premises and (2) if so, is the evidence sufficient to show that such a requirement was met? Both questions must be answered in the affirmative.

In *State v. Covington*, 273 N.C. 690, 698, 161 S.E. 2d 140, 146 (1968), Justice Bobbitt, now Chief Justice, stated:

> "Under G.S. 15-44 admittance, in the absence of hostile action from inside the dwelling prior to such demand, must me 'demanded and denied' before a forcible entry is lawful where, as here, there is neither a search warrant nor a warrant for the arrest of an occupant or supposed occupant. Indeed, *State v. Mooring*, 115 N.C. 709, 20 S.E. 182, seems to support the view that this requirement would apply even though the officers have a search warrant or warrant of arrest. See 15 N.C.L.R. 101, 125."

Although Judge Webb made no findings as to whether admittance to the premises had been demanded and denied, his failure to do so, in the absence of conflicting evidence, is not fatal. *State v. Bell*, 270 N.C. 25, 153 S.E. 2d 741 (1967); *State v. Keith*, 266 N.C. 263, 145 S.E. 2d 841 (1966); *State v. Basden, supra*. The requirement that a police officer, armed with an arrest warrant or search warrant must demand and be denied admittance before making forcible entry, serves to identify his official status and to protect both the officer and the occupant. *State v. Covington, supra*. The uncontradicted evidence in the record tends to show that officers from five separate law enforcement agencies armed with arrest warrants, went to and surrounded the defendants' residence shortly after midnight on 21 March 1972. The officers used loud speakers to call into the premises and order the occupants to come out. In response, the defendants came out, were arrested and placed in a patrol car. Tear gas was sprayed into the house and when Wright failed to come out, officers entered the house to search for him. Surely the actions of the officers in this case immediately before entering the defendants' premises were sufficient to advise any occupant of their official status and satisfied any requirement that admittance be demanded and denied. We hold that under the circumstances of this case the officers were authorized to enter

defendants' premises to search for Wright and this authority was not vitiated by the fact that he was not actually found therein. *State v. Mooring, supra.*

[2]  Additionally, defendants contend that the discovery of State's exhibit 3 was the result of an unlawful search. Defendants ground this argument on the fact that the officers had no search warrant.

The trial judge after the *voir dire* hearing in effect found and concluded that State's exhibit 3 was discovered by the officers "in plain view on the mantel in the living room" when they entered the premises to search for Wright, and that a search warrant was not required. This finding and conclusion is supported by the evidence. An officer in the discharge of his official duties may seize, without a warrant, articles in plain view. *State v. Harvey,* 281 N.C. 1, 187 S.E. 2d 706 (1972); *State v. Virgil,* 276 N.C. 217, 172 S.E. 2d 28 (1970); *State v. Howard,* 274 N.C. 186, 162 S.E. 2d 495 (1968). The trial judge did not err in admitting State's exhibit 3 into evidence.

The defendants had a fair trial free from prejudicial error.

No error.

Judges VAUGHN and GRAHAM concur.