STATE OF NORTH CAROLINA v. TOMMY ROY GREGORY

No. 728SC843

(Filed 20 December 1972)

**1. Criminal Law § 84— warrantless search of vehicle — probable cause — consent**

    The trial court did not err in the admission of evidence obtained as a result of a search of a truck driven by defendant where the *voir dire* evidence supported the trial court's determination that officers had probable cause to search the truck for stolen property, and uncontradicted *voir dire* evidence disclosed that the defendant gave officers permission to search the truck.

**2. Criminal Law § 76— admission of confession — failure to hold voir dire**

    The trial court erred in the admission of defendant's confession over objection without conducting a *voir dire* hearing to determine whether the confession was voluntarily and understandingly made by defendant after he had been fully advised of his constitutional rights.

ON *certiorari* to review the trial of defendant before *Cowper, Judge,* and a jury, 22 May 1972 Session of Superior Court held in WAYNE County.

Defendant, Tommy Roy Gregory, was charged in separate bills of indictment, proper in form, with: (1) felonious breaking and entering, larceny and receiving of personal property from the home of W. Howard Johnson, Route 2, Goldsboro, and (2) felonious breaking and entering and larceny of personal property from the Girl Scout Council of Coastal Carolina, Inc., Route 2, Dudley. Upon defendant's pleas of not guilty, the State offered evidence tending to show that on the night of 12 March 1972 the home of W. Howard Johnson (Johnson) was broken into and an avocado colored refrigerator-freezer, color television, and black and white television were stolen. A white 1968 Frigidaire refrigerator, property of the Girl Scout Council of Coastal Carolina, Inc., was stolen from a locked building at Camp Trailee, Route 2, Dudley on 12 March 1972.

Rayburn Brown, a neighbor of Johnson, testified that while returning home on 12 March 1972 between the hours of 7:30 and 8:00 p.m. he observed a six wheel U-Haul truck about two miles from his home "with a car behind it flashing its lights on and off." Soon after his arrival at home, Brown noticed that a six wheel U-Haul truck had stopped in front of his home. Two men with long hair and not wearing shirts got out of the

truck and walked "back down the highway" toward the Johnson home. Brown took a flashlight and walked behind his home and shined the light in the direction of the Johnson residence; whereupon, the two men "jumped and ran back toward the truck and got in the truck and left." After walking to the Johnson home and finding a "mess under the carport" and ascertaining that a refrigerator had been removed from the Johnson home, Brown got into his automobile and attempted, without success, to catch the truck. Brown then returned home and telephoned Johnson to inform him of what had transpired.

Jeffrey Davis, who lives about one quarter mile from the Johnson home, testified that shortly after 9:00 p.m., 12 March 1972, he answered a ring of the doorbell and saw "two boys," one of whom he identified as defendant, standing on the front porch of his home. Davis stated that these males did not have shirts on and described their hair as being "kind of long." Davis testified: "They asked me did John Andrews live at my house because they said someone told them he lived there. I told them that he didn't." While conversing with these males Davis noticed that a six wheel Ford U-Haul truck bearing Virginia license plates was parked in his driveway. Davis stated: "When the truck left my driveway it headed toward Mr. Johnson's home." About 9:30 p.m., Davis related this information to Deputy Sheriff Kenneth Pennington of Wayne County.

Pennington, responding to a call, went to the Johnson residence at about 8:30 p.m., 12 March 1972, to investigate the reported breaking and entering. Upon seeing the broken glass in the kitchen door and getting a description of the stolen property, Deputy Sheriff Pennington spoke with Brown and Davis who described the U-Haul truck and the two males whom they had seen. While on patrol, later that night, Pennington spotted two males with long hair driving a truck matching the description given to him by Brown and Davis and after following the truck for a short distance, he turned on his blue light and the driver of the truck stopped in a parking lot. Pennington radioed for assistance, then approached the vehicle and asked defendant, the driver, for identification.

After receiving permission from the defendant and his companion to search the truck, the officers found in the truck various items of household and kitchen furniture including an avocado colored refrigerator-freezer and black and white television, subsequently identified as belonging to Johnson, and a

white 1968 Frigidaire refrigerator, subsequently identified as belonging to the Girl Scout Council of Coastal Carolina, Inc.

Defendant offered no evidence and was found guilty of felonious breaking and entering and larceny from the Girl Scout Council of Coastal Carolina, Inc., and from W. Howard Johnson. From judgments imposing concurrent prison sentences of 10 years, defendant appealed.

*Attorney General Robert Morgan and Assistant Attorney General William F. Briley for the State.*

*Herbert B. Hulse and George F. Taylor for defendant appellant.*

HEDRICK, Judge.

[1]  Defendant assigns as error the court's denial of his motion to suppress the evidence obtained as a result of a search of the Ford U-Haul truck. The court conducted a *voir dire* hearing in the absence of the jury regarding all of the circumstances concerning the search of the vehicle and after hearing testimony from Rayburn Brown, Jeffrey Davis, and Deputy Sheriff Pennington of Wayne County (defendant offered no evidence) the court made detailed findings of fact and concluded that the officers had probable cause to stop and search the vehicle. Such findings, when supported by competent evidence, are binding on appellate courts. *State v. Pike,* 273 N.C. 102, 159 S.E. 2d 334 (1968). There was plenary competent evidence to support the trial judge's findings of fact, which support his conclusion. Moreover, uncontradicted evidence adduced on *voir dire* disclosed that the search was made after permission had been given by the defendant. One's consent to a search made by officers of the law dispenses with the necessity of a search warrant and that person may not thereafter contend that the lawfully obtained fruits of that search were not properly admitted into evidence. *State v. Grant,* 279 N.C. 337, 182 S.E. 2d 400 (1971); *State v. Virgil,* 276 N.C. 217, 172 S.E. 2d 28 (1970); *State v. Blackburn,* 6 N.C. App. 510, 170 S.E. 2d 501 (1969). The failure of the trial judge to make findings as to whether permission was given for the search, in the absence of conflicting evidence, is not fatal. *State v. Lynch,* 279 N.C. 1, 181 S.E. 2d 561 (1971); *State v. Basden,* 8 N.C. App. 401, 174 S.E. 2d 613 (1970).

There was plenary competent evidence to require submission of this case to the jury and the defendant's motion for judgment as of nonsuit was properly denied.

[2]  Defendant assigns as error the court's allowing into evidence, over his objection, in-custody statements made by defendant to Deputy Sheriff Davis. When the State offered as substantive evidence in-custody statements allegedly made by the defendant to Deputy Sheriff Davis, defense counsel objected, stating: "[T]he defendant was in custody. He knew at the time he wanted an attorney." The trial judge overruled the objection without conducting a *voir dire* hearing and the witness was allowed to testify that the defendant told him that "he would talk to me now but he would wait and let the Court appoint him a lawyer." The witness then related that defendant told him that on 12 March 1972 he was helping his brother-in-law, Acie West, move to Virginia, stopped the U-Haul truck near the Johnson home, "went into the back door, broke the window in the door, opened the door and went in . . . . [T]hey got the avocado refrigerator, a portable television and a color television." After leaving the Johnson house they went to the home of defendant's sister to eat, then went to Camp Trailee "where they opened the back window or sash door that covers the window, went in the window and got a white refrigerator located in the building there, loaded it and went back to West's house. . . . " Deputy Sheriff Davis testified that defendant told him "they were going to try to sell the items that they got from Mr. Johnson's home and Camp Trailee."

We are of the opinion and so hold that while inculpatory in-custody statements attributed to a defendant are admissible over objection for the purpose of contradicting and impeaching his testimony before the jury, *State v. Bryant,* 280 N.C. 551, 187 S.E. 2d 111 (1972), such statements when offered by the State as substantive evidence and objected to by defendant are not admissible until after a *voir dire* hearing in the absence of the jury, the court, based upon sufficient evidence, makes factual findings that such statements were voluntarily and understandingly made by the defendant after he had been fully advised as to his constitutional rights. *State v. Catrett,* 276 N.C. 86, 171 S.E. 2d 398 (1970). Since these requirements were not met in the conduct of the instant trial, prejudicial error is made to appear.

We do not pass upon appellant's remaining assignments of error since the questions posed thereby may not arise upon

a second trial. For the error noted above, defendant is entitled to a

New trial.

Judges VAUGHN and GRAHAM concur.